No. 20,384.

THE ALGONITE STONE MANUFACTURING COMPANY, *Appellant,* V. THE FIDELITY & DEPOSIT COMPANY OF MARYLAND, *Appellee.*

### SYLLABUS BY THE COURT.

BUILDING CONTRACT—*Surety Bond—Inures to the Benefit of Laborers and Materialmen.* A surety bond to guarantee the faithful performance of a contract for the erection of a building, which by reference makes the contract and specifications a part of the bond, the specifications requiring the contractor upon final settlement to furnish satisfactory evidence that all persons who performed labor or furnished materials under the contract have been fully paid, otherwise reserving to the owner the right to retain final payment "until all liabilities are fully discharged by paying them from such money," is held to have been intended for the benefit of laborers and materialmen under the contract; and therefore they may maintain a suit on the bond to enforce their claims without having filed mechanic's liens.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed March 10, 1917. Reversed.

Manufacturing Co. v. Deposit Co.

*R. R. Vermilion, Earle W. Evans, Joseph G. Carey,* and *Eugene Stanley,* all of Wichita, for the appellant.

*R. L. Holmes, Charles G. Yankey,* and *W. E. Holmes,* all of Wichita, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The Stauffer Construction Company, having contracted for the construction of a church building, gave a bond running to the owner, conditioned for the faithful performance of its contract, and the appellee, a surety company, signed the bond as surety. The appellant sold stone to the contractor which was used in the building, and a balance of $1039.44 on the purchase price of the stone was left unpaid. The building was completed May 25, 1914. No lien was filed by appellant. No controversy or unsettled matters existed between the owner, the contractor and the surety company. In October of that year the contractor filed a voluntary petition in bankruptcy. This action to recover the balance due for stone furnished was not commenced until May 5, 1915, and the only parties are the stone company and the surety. The appeal is from a judgment sustaining a demurrer to the petition.

The question presented for determination is a narrow one. It is appellant's contention that the bond contains provisions intended for the benefit and protection of the materialmen. The appellee's contention is that the bond was not intended for the protection of the materialmen, that any benefit they might obtain was only incidental. The bond contained these conditions:

"Whereas the said principals have on the 2nd day of July, A. D., 1913, entered into a certain written contract with said owner, to furnish all labor, material and construct a certain church building to be erected at Olmitz, Kansas, according to the plans and specifications furnished by H. W. Brinkman, architect of Emporia, Kansas, which contract is made a part hereof the same as if written at length herein, now therefore, if said principal shall well and faithfully and fully comply with all the requirements in the contract for said work and shall complete same according to the full meaning and intent thereof, then this obligation to be null and void, otherwise to remain in full force and effect."

Nothing in the bond itself suggests an intention to protect any one except the owner. The bond by reference, however,

makes the contract, plans and specifications a part of it, and the appellee concedes that of necessity the extent of the surety's obligations are to be measured by taking the contract and specifications into consideration. Two provisions of the contract and specifications are relied upon by appellant to support the contention that the bond was given to protect the materialmen, the first of which reads:

"It being understood and agreed that final payment shall and will be made within ten days after this contract is completely finished, provided that in each of the said cases the architect shall certify in writing that all work upon the performance of which the payment is to become due has been done to his satisfaction; and provided further, that all claims that might by law become a lien against the property have been adjusted to the satisfaction of the architect and owner and receipts furnished therefor by contractor."

The language selected is, as appellee suggests, only a portion of the clause in the contract. Immediately preceding the portion quoted is the following:

"It is hereby agreed by the parties hereto, that the compensation to be paid by the party of the second part to the party of the first part shall be for all work and materials as shown by the drawings and specifications and this contract shall be twenty-three thousand six hundred and forty-eight dollars ($23,648) and that such sum shall be paid in current funds by the second party in installments on certificates signed by the architect."

The whole clause is construed by the appellee as a mere statement of the owner as to the amount and manner of payment, a statement that he will make final payment within ten days after the contract is completed, provided the architect's certificate is furnished and all claims which might become liens against the property are adjusted to the satisfaction of the architect and the owner, receipts therefor being furnished by the contractor. The appellee's contention therefore is that this provision is in no sense an agreement by the contractor to pay claims for labor or material, but is the statement of a condition precedent to his right of demanding final settlement. It is argued that if the contractor could furnish satisfactory receipts of adjustment with laborers and materialmen showing a release of all liens whether actually paid or merely the credit of the contractor accepted in lieu of liens, no one could question the right of the contractor to demand final settlement; and it is said that the only result of the contractor's failure to

pay the claims of laborers and materialmen would be the right of the owner to withhold final payment.

The other provision of the contract upon which appellant relies is a part of the specifications, which reads:

"Payments—It is understood that the contractor pay all persons who perform labor and furnish materials, in full after each estimate, and upon final settlements he shall furnish satisfactory evidence that all persons who have performed labor or furnished materials under these specifications have been fully paid and in case such evidence is not furnished, the owner shall have the right to retain such moneys due the contractor until all liabilities are fully discharged by paying them from such money."

The appellee insists that this provision likewise is intended merely as a protection to the owner by permitting him to retain the funds if he sees fit until the labor and material claims are paid, and was not intended as a statement of an agreement that the contractor would pay all the claims absolutely or in a certain manner; and that the owner could not decline final payment if the contractor was able to show that the holders of labor and material claims had accepted his credit and made no claims of liens against the property. It is clear, however, that the right to withhold final payment until all claims for labor and material were paid would, of necessity, protect the holders of such claims, so that indirectly, at least, both parties to the contract must be held to have intended that all such claims should be paid.

It may be conceded that it was competent for the parties to agree that the church society would be satisfied provided the building was turned over completed according to the plans and specifications and free from all liability on the part of the owner for any claims on account of material or labor. Plainly, the intent of the parties to the contract of suretyship is the controlling question. In arriving at the intention it is reasonable to take into consideration the fact that it is seldom an owner of residence property would be satisfied to live in a home erected of material or by labor which would never be paid for. The church organization which made the contract for the erection of the building intended the edifice to be used for religious services, and was careful to insert in the contract a provision that no work upon it should be performed on a church holiday. It is fair to assume that the organization had no intention of

securing a building to be used for religious worship upon which claims for labor or material might remain unpaid.

A further argument made by the appellee is based upon the well-known fact of the existence of two kinds of bonds in building contracts—one commonly known as the statutory bond running to the state and filed with the clerk of the court to relieve the property of mechanic's liens; the other commonly known as the performance bond, given to the owner to insure faithful performance of the contract, the use of proper material, good workmanship, and construction according to contract. It is said that surety companies charge different rates for the different risks assumed in the two classes of bonds, and that the parties here recognized the distinction between the two; and attention is directed to the language used by which the contractor was required "to secure the owner with a surety bond to the full amount of contract to insure faithful performance"; also that the allegation in the petition that the contractor "did complete according to the terms of said contract and the specifications" the construction of the building; and that no lien had been filed for the material now sued for. It is insisted inasmuch as the owner could not maintain a suit on the bond because he could not show that he suffered any loss, it is extending the contract of the surety beyond reason to hold that an outsider who has neglected to file a lien and avail himself of the protection afforded by statute shall be permitted to assert greater rights than the owner himself.

The appellee concedes the soundness of the rule in this state as declared in the following language from the opinion in *Life Assurance Society v. Welch, as Sup't, &c.,* 26 Kan. 632:

"Now whatever may be the rule in other states, it is well settled in this state that third parties not privy to a contract, nor privy to the consideration thereof, may sue upon the contract to enforce any stipulations made for their special benefit and interest." (p. 641.)

It is upon the limitations to this rule as stated in the opinion in *Burton v. Larkin,* 36 Kan. 246, 13 Pac. 398, that appellee bases the contention that under the facts in the present case the rule has no application. In the case last cited it was said:

"But there are limitations upon this rule; or rather, the rule is not so far extended as to give a third person who is only indirectly and incidentally benefited by the contract a right to sue upon it. In the

case of *Simon v. Brown*, 68 N. Y. 355, *et seq.*, the following language is used: 'It is not every promise made by one to another from the performance of which a benefit may inure to a third, which gives a right of action to such third person, he being neither privy to the contract nor to the consideration. The contract must be made for his benefit as its object, and he must be the party intended to be benefited.' We think this is a correct statement of the law." (p. 249.)

The facts here, it is urged, are not sufficient to bring the case within the rule of cases where bonds are given to secure the performance of contracts for public improvements which by reason of statutory requirements or the inability to obtain liens upon public property have quite generally been held by the courts to be for the direct benefit of laborers and materialmen, such as the case of *Griffith v. Stucker*, 91 Kan. 47, 136 Pac. 937. The statute applied in that case not only required the bond to be given, but in express terms declared that "any person to whom there is due any sum for labor or material furnished . . . or his assigns, may bring an action on said bond for the recovery of said indebtedness." (Civ. Code, §§ 661, 662.)

The contentions of both parties have been very forcibly presented in the briefs. We have stated at more length those urged in support of the judgment for the reason that we have reached a conclusion exactly contrary to that of the trial court.

In several cases involving the liability of sureties on contractors' bonds the courts have held the language insufficient to impose upon the surety direct liability to laborers or materialmen, that is, insufficient to make the bond a contract of guaranty to beneficiaries as well as a contract of indemnity to the owner. Thus, where there was the simple obligation requiring the contractor to furnish both material and labor and to indemnify the owner, without any covenant in the contract or bond to pay for either materials or labor, the bond was held insufficient to give the lien holder a right of action against the surety. (*Montgomery v. Rief,* 15 Utah, 495, 50 Pac. 623.) Again, a contractor's surety was held not liable to a subcontractor, the bond being for the due performance of a contract to erect a school building and to pay and discharge from the premises all liens for labor, material or otherwise which might accrue on account of the contract. (*Spalding Lumber*

*Co. v. Brown,* 171 Ill. 487, 49 N. E. 725.) These and many other cases upholding appellee's contention are cited in Note, 27 L. R. A., n. s., 573, 591. In the same note will be found many other cases affording laborers and materialmen rights of action provided the contractor's bond is sufficiently definite and precise in terms as to impose upon the contractor an obligation to pay or cause to be paid all claims for labor or material. Among the cases cited are: *Williams v. Markland et al.,* 15 Ind. App. 669, where the obligation of the contractor was to pay for all labor and material required in erecting a school building; *Ochs v. M. J. Carnahan Co.,* 42 Ind. App. 157, 161, where he was required to pay for all material used and all help employed in construction; *Baker & Co. et al. v. Bryan et al.,* 64 Iowa, 561, where the bond was for the faithful performance of the contract, and also to pay all claims for labor and material; *Lumber Co. v. Peterson & Sampson,* 124 Iowa, 599, where the language of the building contract and the proved circumstances make plain an intention to secure not only the owner, but the laborers and materialmen as well. In *King v. Murphy,* 49 Neb. 670, it was said to be the settled law of that state that the sureties on a contractor's bond which stipulates that he shall pay for all labor and material furnished are liable to a subcontractor for materials furnished the principal on account of the contract. And there are a few cases which go to the extent of holding the surety liable to laborers and materialmen where the bonds were simply conditioned for the faithful performance of the contract. These, however, are clearly opposed to the weight of authority and sound reason. In *Green Bay Lumber Co. v. School Dist.,* 121 Iowa, 663, it was held, on the other hand, that a naked obligation in the contract and bond to construct a public school house binding the contractor to provide materials and labor and deliver the building free from all claims or liens does not inure to the benefit of laborers and materialmen.

The conclusion we have reached is, that within the principle declared in *Burton v. Larkin,* 36 Kan. 246, 13 Pac. 398, from which we have quoted *supra,* and *Surety Co. v. Thorn,* 9 Kan. App. 8, 57 Pac. 237, it must be said that the laborers and materialmen are sufficiently designated as a class for whose benefit the condition requiring the contractor to pay

for labor and material was inserted in the contract, and that therefore they may maintain this action upon the bond.

The judgment is reversed and the cause remanded with direction to overrule the demurrer.

PORTER, J. (dissenting) : I am unable to concur in the decision, and I believe it is directly opposed to the limitation of the general rule recognized in *Burton v. Larkin*, 36 Kan. 246, 13 Pac. 398. The materialman was clearly "neither privy to the contract nor to the consideration." As held in the opinion in that case, " 'the contract must be made for his benefit as its object, and he must be the party intended to be benefited.' " (p. 249.) I concede that in bonds required by statute for the faithful performance of contracts of a public nature, where liens for labor or material can not be secured, the bond will be construed as intended for the benefit of laborers and materialmen without any mention in the bond, because the statute is a part of the bond and makes the bond surety for all claims for labor and material. But where there is nothing to prevent the owner from requiring a bond for the benefit of those who furnish labor and material as well as a bond for his own benefit, the courts have no right to read into a bond of the latter kind something not intended by either party to it. The rule invoked by appellant, that where a bond written by a corporation engaged in the business of furnishing surety for compensation "is fairly open to two constructions, one of which will uphold and the other defeat the claim of the insured, that which is most favorable to the insured will be adopted" (*The State v. Construction Co.*, 91 Kan. 74, syl. ¶ 1, 136 Pac. 905), has, in my judgment, no possible room for application in the present case. The insured, for whose express benefit the bond was executed, is not here asking that doubtful language in the bond shall be construed so as to uphold some claim of his to which the surety is opposed. As said in the opinion in *The State v. Construction Co.*, supra, "but it is rightly contended that where there is no ambiguity, the plain intention of the parties can not be disregarded or nullified by construction." (p. 81.) I think it is too clear for argument that if the contractor had secured a release of all liens for labor and material upon his own credit, and without payment of them, the

owner could not have withheld final settlement; and plainly in that situation the obligation of the surety would have been satisfied. However, I place my dissent squarely upon the limitation so clearly recognized by this court in the case of *Burton v. Larkin,* supra.

I am authorized to say that Mr. Justice WEST concurs in this dissent.