No. 29,572.

H. K. NANCE, *Appellee*, v. J. E. MULLIKIN, *Appellant*.

(293 Pac. 490.)

Opinion filed December 6, 1930.

*H. O. Trinkle,* of Garden City, for the appellant.

*Carl Van Riper,* of Dodge City, and *Lester Luther,* of Cimarron, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action of forcible detainer brought in the court of a justice of the peace of Gray county by the purchaser of a farm in that county which had previously been leased by his grantor to the defendant, and involves the question of the right of a purchaser to terminate the lease before the expiration of the period covered thereby, on the strength of a provision in the lease granting such privilege. The case was tried in the justice court, appealed to the district court and after judgment therein for the plaintiff, the defendant appeals to this court.

The lease was dated November 9, 1928. It was made in duplicate on printed forms, some provisions stricken out and some added in typewriting. Portions of the second, third and fifth paragraphs and all of the fourth and twelfth paragraphs were eliminated by lines drawn through the printing, and nearly all of the tenth paragraph was added in typewriting.

The following is a copy of the sixth and tenth paragraphs of the lease:

"Sixth. In case of sale of said premises during the continuance of this lease, and the purchaser desiring possession, said second party hereby agrees to surrender the same at once, on payment to him of a fair and reasonable compensation for the growing and immature crops; and if he and the purchaser cannot agree as to the amount of such compensation, it shall be left to three disinterested appraisers, of whom said second party shall choose one, the purchaser one, and these two the third. Their decision shall be final as to the amount to be paid to said second party.

"Tenth. For the use of said premises, said second party agrees to pay to said first party or his agent authorized to receive it, all taxes for 1929 and 1930. First party to lease above land as follows: Party of the second part is to break out all land possible in 1929 and receive all crop for said year, in the fall of 1929 said land is to be sown to wheat and party of the second part is to get the wheat crop which matures in the spring of 1930 for his own use, except as above he is to pay the 1929 and 1930 taxes as above. For the balance three years party of the first part is to receive for her rental one-fourth of all the wheat delivered to market should the crop yield below ten bushels per acre, or one-third of crop delivered to market should the crop yield over ten bushels per acre. Party of the second part will send the tax money to party of the first part as soon as first party finds out the amount."

Plaintiff purchased the farm from the lessor on August 31, 1929. Both the contract of purchase and the warranty deed bore that date and contained the following sentence:

"Subject to the following conditions:

"First party to retain one-half interest in the oil and mineral rights, also subject to a farm lease now on the place to J. E. Mullikin."

The evidence shows that the plaintiff knew the farm was leased at the time he purchased it and that he at that time received with the other papers a copy of the lease made with the defendant.

Appellant maintains that the plaintiff, by virtue of the clause in the contract of sale and deed, took the land subject to the lease and he therefore stood in no better position to terminate it than the lessor who, of course, could not do so during the period covered thereby. He argues that taking the title subject to the lease means subordinate to or subservient to such lease and the provisions thereof, and distinguishes between a case where the purchaser takes the land subject to an outstanding leasehold estate and one where he thought he was getting a full and complete title without any reservations or exceptions.

We cannot fully agree with the theory of the learned counsel for the appellant, that the appellee by taking his title to the farm, subject to the existing lease thereon, thereby submitted to all the rights of the lessee thereunder and yielded his rights as purchaser under the provisions of the lease. We think he took the title subject to all the provisions of the lease, including those in paragraph six made expressly for the benefit of the purchaser. (35 C. J. 1216.)

Appellant insists that there is an inconsistency between the provisions of paragraphs six and ten, that the latter sets out the real agreement between the lessor and lessee, that it is the last expression and represents their final thought on the subject rather than any

earlier paragraph when they seriously differ, and it was written in typewriting, whereas paragraph six was formal printing and probably not seriously considered but passed over as merely formal. We may consider all these reasons together.

It is said by way of showing inconsistency between these two paragraphs that lessee was to have the first two crops for breaking the sod and paying the taxes for the first two years and beginning with the third year was to give the lessor a share of the crops for rent, that the termination of the lease by the purchaser in less than one year after the making of the lease, as authorized by paragraph six, is particularly inconsistent because it makes no provision for compensation for the breaking of the sod by such early termination and only for growing and immature crops. If the spring crop was not a reasonable compensation for such sod breaking, of which we are not advised and probably no such showing was made in the case, then it is an unfortunate situation and possibly an oversight or an unequal bargain in that respect, but the provisions are by no means inconsistent. When it was agreed by the terms in paragraph six that the lessee was to surrender the premises at once in case of a sale during the continuance of the lease and the purchaser should desire possession thereof, it should have been fully understood that such a contingency might occur very early in the life of the lease and if so, the surrender must be at once. There is nothing ambiguous or difficult of understanding in these terms and nothing inconsistent with the provision in the tenth paragraph as to the three-year term of the lease and the payment of rent by work or share of crop for each of the three years.

The old rule as to giving preference, in the construction of a written instrument, to the last expression therein, where there is an apparent inconsistency or lack of harmony, has been almost abrogated and is not now the most approved rule by which the real intention of the parties to the written instrument is reached. The construction should be based upon the intention of the parties, to be determined from the sense of the entire contract.

"While the earlier cases recognized exceedingly nice and refined distinctions for the purpose of determining the character of covenants, the rule is now thoroughly settled that the question of whether they are independent or dependent rests on the intention of the parties, to be determined from the sense of the entire contract rather than from any particular form of expression, or the order in which the stipulations occur in the instrument . . . In case of doubt covenants will generally be construed as dependent rather than as independent . . ." (13 C. J. 568.)

See, also, 35 C. J. 1177, 1179; *Ehrsam v. Jackman*, 73 Kan. 435, 85 Pac. 559.

The rule urged by the appellant as to a preference to be given to written portions of a contract over printed portions is only applicable where there is an irreconcilable conflict between the two parts, so that they cannot be considered as dependent upon each other, but are such separate and independent provisions—so inconsistent with each other that one or the other must of necessity fall.

"In construing a lease on a printed form the fact that the lease was formulated by a process of elimination and adjection should be taken into account. Effect should be given to both the written and printed provisions of the lease, if they are consistent with each other, or if they may be reconciled; but where there is an irreconcilable conflict between a written and a printed clause of a lease, the former will prevail." (35 C. J. 1178.)

We find no such condition here. One provision specifies the duration of term, work to be done and rent to be paid, the other outlines a contingency which may reasonably occur, and if it does it will terminate the lease at once, and in such event the lessee is to be compensated in a certain way. The fact that the compensation may be quite inadequate will not make such provision inconsistent with the one specifying length of time, share of crops, etc.

Appellant refers to the first part of section 237 of 6 Ruling Case Law on the subject of contracts, in which it will be readily observed it is limited to cases where there is inconsistency or reasonable doubt. The subsequent part of the same section makes it the imperative duty of the court to give effect, if possible, to all parts of the instrument, as can often be done by regarding one part as qualifying another part.

"It is a well-settled rule of law that where part of the contract is written and part is printed, and the written and printed parts are apparently inconsistent or there is reasonable doubt as to the sense and meaning of the whole, the words in writing will control the construction of the contract. . . . The general rule is resorted to only from necessity when printed and written clauses cannot be reconciled . . . But it is the imperative duty of courts to give effect, if possible, to all the terms of an agreement. The construction is to be made on a consideration of the whole instrument, and not on one or more clauses detached from the others; and this principle applies as well to instruments partly printed and partly written, as to those wholly printed or wholly written. Where the written and printed parts may be reconciled by any reasonable construction, as by regarding one as a qualification of the other, that construction must be given, because it cannot be assumed that the parties intended to insert inconsistent provisions." (pp. 847, 848.)

It is suggested as the lessor prepared the lease it should be construed more strongly against her and consequently against her grantee, but this resort is only used in cases of doubt as to meaning. Appellant also suggests that the two letters written by lessor to lessee before the execution of the lease might assist in furnishing us with the real intention of the parties to the lease, but the lease is the final expression of their agreement, and such preliminary offers, proposals and exchange of views are presumed to have been embodied in the final agreement to the extent that they were mutually satisfactory, even if some of the matters previously considered may now be found to have been eliminated or modified. Besides, resort cannot be had to such preliminary information to vary the terms of the agreement finally reached, but only to furnish details that have been omitted or to solve something that is ambiguous. The difference here is not one arising out of any ambiguity.

The judgment is affirmed.