No. 35,745

THE HAYNES HARDWARE COMPANY and THE WHEELER KELLY
HAGNY TRUST COMPANY, *Appellees*, v. THE WESTERN CASUALTY
AND SURETY COMPANY, *Appellant.*

(133 P. 2d 574)

Opinion filed January 23, 1943.

*T. F. Railsback*, of Kansas City, argued the cause, and *W. N. Smelser*, of Emporia, was on the briefs for the appellant.

*Everett E. Steerman*, of Emporia, argued the cause, and *W. H. Jones*, of Wichita, and *E. H. Rees*, of Emporia, were on the briefs for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This was an action on a bond. Plaintiffs prevailed, and the defendant surety company appeals.

In August, 1938, Charles H. Sharp desired to construct an apartment building on his own lots in the city of Emporia. In order to finance the construction of the building he obtained a loan in the sum of $32,000 from the Eureka Building and Loan Association, which was secured by the Federal Housing Administration. Sharp executed his note in that amount and a mortgage on the lots and apartment to be constructed as security for the loan. The note and mortgage were executed both to the Eureka Building and Loan Association and to the Federal Housing Administration. Estimated advancements were to be made out of the loan to Sharp as the work progressed. The subject of periodical disbursements to Sharp and many other subjects of construction were covered by an extensive contract between Sharp and the mortgagees. In addition to the $32,000 mortgage security for the loan, Sharp was required to execute a bond to the mortgagees in the sum of $10,000. The instant action was instituted on that bond, the bond having been furnished by appellant, The Western Casualty and Surety Company of Fort Scott.

One of the plaintiffs was The Haynes Hardware Company, a corporation, of Emporia, a lien claimant. It was also the assignee of various other lien claims on the same building project. The other plaintiff was The Wheeler Kelly Hagny Trust Company, a corporation, of Wichita. It had acquired the interest of the Eureka Building and Loan Association in the mortgage and contract and, by the consent of the appellant, was substituted in the bond as one of the obligees.

An action on the bond was originally instituted by The Haynes Hardware Company alone. Later The Wheeler Kelly Hagny Trust Company was made an additional party plaintiff and, by leave of court, filed an amended petition. The latter joined in the action in the capacity of an obligee in the bond and sought to enforce the terms, conditions and requirements of the bond, and the contract referred to in the bond, for the use and benefit of lien claimants who had furnished material and performed labor in the construction of the apartment building. Appellant demurred to the amended petition on the ground it did not state a cause of action and for the

reason several causes of action were improperly joined. Appellant had previously lodged a general demurrer to the original petition, which was sustained. That ruling will be treated later under a separate contention. When the last demurrer was presented the trial court suggested it might be advantageous to the parties not to have a ruling thereon at the time and that they join issues by appropriate pleadings and have a pretrial of all legal questions involved pursuant to the provisions of G. S. 1935, 60-2902. They were advised that, if such procedure were followed, they would waive no rights under the demurrers previously filed and that no prejudice would result to any of the parties by reason of the suggested procedure. The parties stipulated to follow the suggested procedure and joined issues by filing appropriate pleadings. Later the parties also stipulated as to the facts. Pursuant to the provisions of G. S. 1935, 60-2902, the trial court filed its rulings on all issues of law and rendered judgment accordingly. The record is voluminous and the stipulation alone comprises approximately one hundred pages. We deem it unnecessary to set forth the entire stipulation. Pertinent portions thereof will be noted under contentions relied upon by appellant for a reversal of the judgment.

Appellant strenuously argues the bond was not intended to cover and did not provide for the payment of lien claims. It insists it was given only to guarantee the erection and completion of the building, and not to insure the payment of claims for labor and material furnished which were required for its erection and completion.

The bond contains the following provision:

"WHEREAS, the principal and the obligee have entered into a certain written contract [hereinafter called the contract], dated August 29, 1938.

"*Erection and completion of the Senate Apartment Project 084-00008, Emporia, Kansas, in accordance with plans and specifications.*" (Emphasis supplied.)

The italicized portion of the bond was inserted in a blank space with typewriter.

In what did the contract referred to in the bond consist? To the instrument denominated "The General Conditions of the Contract for the Construction of Buildings" was attached another instrument denominated "Supplementary General Conditions." The first paragraph of the latter document provides:

"*Special Note:* These Supplementary General Conditions and the Specifications bound herewith shall be subject to all the requirements of the Standard Form of the 'General Conditions of the Contract' (fifth edition, copyrighted

1937) except that these Supplementary General Conditions shall take precedence over and modify any pages or statements of the 'General Conditions of the Contract' and shall be used in conjunction with them as a part of the 'Contract Documents.'"

Paragraph 9 of "The General Conditions of the Contract for the Construction of Buildings" provides:

"Unless otherwise stipulated, the contractor shall provide and pay for all materials, labor, water, tools, equipment, light, power, transportation, and other facilities necessary for the execution and completion of the work."

The building and loan contract, among other things, provides:

"The borrower will erect on the land a housing project, strictly in accordance with plans and specifications (hereinafter called the Plans and Specifications) prepared by Ben Byrnes, architect, a master set of Plans and Specifications, marked 'Plans and Specifications Senate Apartment Project' and identified on each page thereof by the Architect, Lender, and Borrower, shall be placed on file with the Administrator, and when so filed shall govern in all matters that may arise with respect to such Plans and Specifications."

Section 3 of the bond reads as follows:

"If at any time there come to the notice or knowledge of the Obligee that any claim for labor performed or for materials furnished *the principal* in or upon the work specified in the contract remains unpaid, or that any lien or notice of lien for such work or materials has been filed or served, the Obligee shall withhold from the Principal payment of any moneys due or to become due to the Principal under the contract until the payment of such claim or discharge of such lien or notice of lien, and will so notify the Surety, giving a statement of the particular facts and amounts of each such claim, lien, or notice of lien." (Emphasis supplied.)

Pursuant to the provisions of the building and loan agreement, plans and specifications were prepared by the architect designated. The specifications, among other things, provide:

"Art. 30. Guaranty Bonds—The Owner shall have the right, prior to the signing of the Contract, to require the Contractor to furnish bond covering the faithful performance of the Contract and the payment of all obligations arising thereunder, in such form as the Owner may prescribe and with such sureties as he may approve. If such bond is required by instructions given previous to the submission of bids, the premium shall be paid by the Contractor; if subsequent thereto, it shall be paid by the Owner."

The instant bond was executed in compliance with the foregoing provisions by Charles H. Sharp as the principal. Sharp paid the premium on the bond. Sharp was a builder and employed no additional contractor. All the instruments previously mentioned were bound together and constituted the contract referred to in the bond. The instruments so bound together contained a typewritten title

page designated "General Conditions & Specifications for Senate Apartment—Emporia, Kansas. For Mr. Chas. H. Sharp." The title page was prepared by the designated architect and it expressly designates Chas. H. Sharp as "Owner & Contractor." The specifications also contained express provisions that the contractor should furnish the labor and materials required to finish the work in every particular.

The intent of the bond with respect to the protection of lien claimants is the controlling factor in determining their right to recover on the bond. *Manufacturing Co. v. Deposit Co.*, 100 Kan. 28, 31, 163 Pac. 1076.) In order to ascertain that intent it is of course necessary to consider and construe the bond and the contract therein mentioned, with all its parts, together. (*Nance v. Mullikin*, 131 Kan. 828, 293 Pac. 490; *Cooke v. Luscombe*, 132 Kan. 147, 294 Pac. 147.) In order to ascertain the intent it is sometimes necessary, and always proper, to consider the situation of the parties and the legal principles which they are presumed to know and have in mind. (*Fidelity & Deposit Co. of Baltimore, Md., v. Rainer*, 220 Ala. 262, 125 So. 55, 77 A. L. R. 13, and annotation 77 A. L. R. 21.) So considered and construed, we have no hesitancy in holding the bond was intended as a faithful-performance bond; was given by Sharp in the double capacity of owner and contractor, and was executed by appellant, at least in part, for the direct benefit of lien claimants. It should be remembered when the loan was made to Sharp the apartment had not been constructed and the mortgagees and obligees in the bond manifestly desired to make certain the apartment, when completed, would not be encumbered with additional liens which might result in litigation as to priority of liens or which might affect the sale price of the property in the event of mortgage foreclosure. They clearly also desired to protect laborers and materialmen. But whatever the motive, or motives, may have been, it is clear the intention was to provide a bond which would not only protect the mortgagees and obligees in the bond, but which would also protect laborers and materialmen. The intent of the bond and not the motive is the controlling factor. (*Bristol Steel Works v. Plank*, 163 Va. 819, 178 S. E. 58, 118 A. L. R. 50, 53, and cases therein cited.)

If, however, any doubt originally existed between the parties with respect to the nature of the bond required, that doubt was resolved by the subsequent and early construction placed on the bond by the

parties themselves. The bond was executed September 14, 1938. As early as October, 1938, Sharp was anxiously awaiting advancements on the loan from the mortgagees in order that he might be able to pay for labor performed and material furnished. He sent the premium on the bond to appellant and calculated the amount on the sum of $10,000, the amount of the bond. Appellant refused to accept it. Appellant contended the premium was required to be calculated on the total amount of the contract price of the building and not on the face value of the bond. The mortgagees refused to remit advancements to Sharp until the nature of the bond was clearly understood and determined and the proper premium thereon was paid. Correspondence ensued between Sharp, the Federal Housing Administration, one of the mortgagees and an obligee in the bond, and appellant. The Federal Housing Administration representatives expressly advised Sharp it was insisting on a completion bond and that a completion bond meant not only the mere completion of the building but the payment of all bills. Sharp paid the premium in accordance with the requirements of appellant and the demand of the Federal Housing Administration. It was not until after he had done so, and after appellant had advised the latter obligee that it had received payment of the proper premium on the bond, that the mortgagees sent the loan remittances to Sharp. It therefore appears all parties to the bond clearly understood the bond was intended to guarantee the payment of claims for labor and material.

Appellant ably argues the instant action, under an express provision of the bond, is not maintainable. Paragraph 11 of the bond provides:

"No right of action shall accrue upon or by reason hereof, to or for the use or benefit of any one other than the Obligee named herein; and the obligation of the Surety is and shall be construed strictly as one of suretyship only."

What is the effect of such a general provision in a bond where the parties thereto have expressly written a special provision into the bond which makes a building contract a constituent part of the bond and where such contract expressly provides that the "owner and contractor" shall pay all claims for labor and material?

Does paragraph 11, under these circumstances, bar the right of laborers, or materialmen from enforcing the provisions of the bond for the payment of their claim? We think not. In the first place the general provision in the bond, namely paragraph 11, is utterly

inconsistent and in conflict with the special contract provision inserted in the bond and which was inserted, at least in part, for the protection of laborers and materialmen. Where an irreconcilable conflict exists between general provisions of a contract and particular portions written into the contract preference is given to the latter for the purpose of ascertaining the intention of the parties. (*Nance v. Mullikin*, supra, p. 832; *Pacific Rice Mills v. Westfeldt Bros.*, 31 F. 2d 979.) In so far as rights of laborers and materialmen are concerned, we must disregard paragraph 11. What were their rights under the bond with paragraph 11 excluded?

It is well settled that a third person, although not a party to the contract and without knowledge thereof, may avail himself of a contract made by others for his benefit. (*Goeken v. Bank*, 104 Kan. 370, 179 Pac. 321; *West v. Sims*, 153 Kan. 248, 252, 109 P. 2d 479.) That general principle, by the great weight of authority, is applicable to actions on bonds similar to the instant one. (*Manufacturing Co. v. Deposit Co.*, 100 Kan. 28, 163 Pac. 1076; *Cooke v. Luscombe*, 132 Kan. 147, 294 Pac. 849; *Fidelity & Deposit Co. of Baltimore, Md., v. Rainer*, 220 Ala. 262, 125 So. 55; annotation 77 A. L. R. 21; *Bristol Steel Works v. Plank*, 163 Va. 819, 178 S. E. 58; annotation 118 A. L. R. 57.)

Moreover, it also has been held that where a contract is made for the benefit of third persons the parties thereto cannot, by an agreement between themselves, such as paragraph 11, and in which the third party does not participate, defeat the right of such third party thereunder. (*Gastonia v. Engineering Co.*, 131 N. C. 363, 42 S. E. 858; *Shoaf v. Insurance Co.*, 127 N. C. 308, 37 S. E. 481.) The laborers and materialmen clearly had a right of action on the instant bond.

The bond was intended not only for the benefit of laborers and materialmen, but was, of course, also intended for the benefit of the obligees therein named. It was to the interest of the obligees and laborers and materialmen that the latter should be paid. Each of them could maintain separate actions on the bond to insure such payment. Either action, if successful, would result in benefit to both of them. One action by both of them, on the same bond, would avoid a multiplicity of suits. Was the obligee, under these circumstances, barred by paragraph 11 from becoming a coplaintiff with laborers and materialmen simply because such a joint action would also inure to the use and benefit of laborers and material-

men? We do not think so, and neither did the supreme court of North Carolina in a well-reasoned opinion involving the same principle. (*Gastonia v. Engineering Co.*, supra, p. 366.) In this state The Wheeler Kelly Hagny Trust Company also had express statutory authority to maintain the instant action alone for the benefit of laborers and materialmen. The pertinent portion of G. S. 1935, 60-403, provides:

"An executor, administrator, guardian, trustee of an express trust, *a person with whom or in whose name a contract is made for the benefit of another,* or a person expressly authorized by statute, may bring an action without joining with him the person for whose benefit it is prosecuted." (Emphasis supplied.)

See, also, *Goebel v. Anderson*, 123 Kan. 211, 212, 255 Pac. 77.

In view of what has been said heretofore, it follows appellant's demurrer to the amended petition was properly overruled.

Did the matters pleaded in defendant's answer and the stipulated facts constitute a defense to the action on the bond? It was stipulated The Wheeler Kelly Hagny Trust Company had assigned its interest in the mortgage to the Prudential Life Insurance Company prior to the institution of the instant suit. Appellant contends it therefore had no interest in the instant action. The assignment was not an assignment of the original mortgage. Sharp had defaulted in the payment of claims for labor and materials, and a new mortgage loan was financed in the sum of $38,000. The old mortgage was released and it was the new mortgage which was assigned. All claims for labor and material, however, had not been paid and they had all accrued prior to such assignment, and while The Wheeler Kelly Hagny Trust Company was a mortgagee and one of the designated obligees in the bond, the bond had not spent its force so far as liability of appellant thereon was concerned. The laborers and materialmen had not been paid, and The Wheeler Kelly Hagny Trust Company had not lost its rights to enforce the terms of the bond for itself or for the benefit of laborers and materialmen.

Appellant also contends the instant action could not be maintained for the reason a general demurrer previously had been sustained to the original petition filed in this action by The Haynes Hardware Company, and that no appeal was taken from that ruling, which has now become final. The contention cannot be sustained. When that demurrer was sustained, plaintiff, The Haynes Hardware Company, was given leave to amend its petition, which it did promptly. The amendment was not merely one of form, but one of

substance. It set forth additional and material provisions contained in the contract, which was an integral part of the bond. It also contained another distinctly new allegation designed to show the bond was given to guarantee the faithful performance of the building contract. The charge was that the parties to the bond had placed their own construction upon the purpose and intent of the bond, which was that it was intended to guarantee payment of claims for labor and material. In addition to the new subject matter pleaded, a new party, The Wheeler Kelly Hagny Trust Company, was added as a coplaintiff with the consent of the court. The new plaintiff was one of the designated obligees in the bond and not a mere lien claimant. Its rights to maintain the instant action, as previously shown, were expressly provided by statute. The identical relief which was granted, under the amended petition, could have been granted if The Haynes Hardware Company had not been a party to the amended petition at all and if the action had been prosecuted solely and alone by The Wheeler Kelly Hagny Trust Company. Manifestly the ruling on the original demurrer, under the circumstances, did not constitute a bar to the prosecution of the action under the amended petition.

Appellant also contends The Wheeler Kelly Hagny Trust Company is estopped from maintaining the instant action by reason of the fact it.had previously instituted a mortgage foreclosure action against Sharp, his wife, several lien claimants who at that time had filed liens against the property in question, and appellant. The appellant contends The Wheeler Kelly Hagny Trust Company made an election of remedies in the foreclosure action. A review of the allegations in the foreclosure action discloses there was no election of remedies, but we need not pursue that contention. The foreclosure action was dismissed without prejudice at the cost of the plaintiff. It was agreed to refinance the old loan and obtain a larger loan in the sum of $38,000 through the Federal Housing Administration. In order to finance the new loan it was found necessary to work out a settlement with claimants for labor and material. Appellant was not a party to that settlement agreement. In that agreement it was expressly stipulated:

"Nothing in this agreement contained shall be construed as releasing any person, firm, or corporation which may be liable for the payment of the balance due each of the parties of the second part [owners of the labor and material accounts] as specifically set out and contained in Exhibit A, attached hereto and made a part hereof."

The Wheeler Kelly Hagny Trust Company was not estopped from maintaining the instant action by reason of the foreclosure action. Appellant was in no wise prejudiced thereby. In view of the above stipulation appellant was not, by the agreement of settlement, relieved from liability on its bond. (*Dean v. Rice*, 63 Kan. 691, 66 Pac. 992; 50 C. J. 118.)

Appellant further contends The Wheeler Kelly Hagny Trust Company was barred from maintaining the instant action by reason of a former action it had instituted against the Federal Housing Administration and the appellant for damages it claimed to have suffered by reason of the default of Sharp in failing to pay lien claimants and for other damages which it had suffered by reason of being obliged to refinance the new loan. In that action a judgment was recovered against appellant on the bond for items of damage in the sum of $1,050. The judgment was compromised at $950 and was paid by appellant. It is now contended the instant action could not be maintained because it constitutes the splitting of a cause of action. Numerous decisions are cited in which it was held a party cannot split a single cause of action, but must set up all damages suffered by him as a result of a breach of duty in the one action. Those decisions are sound and need not be reviewed. The trouble is that the principle does not apply to the facts in the instant case. Here there was no identity of things sued for. The first action was not brought for the purpose of recovering the amounts due laborers and materialmen, but was an action for damages resulting to The Wheeler Kelly Hagny Trust Company by reason of Sharp's, the principal's, default in the payment of such claims. It follows there was no identity of causes of action. Neither was there identity of persons. Laborers and materialmen were not parties plaintiff or defendant in the first action. Furthermore, in the instant action The Wheeler Kelly Hagny Trust Company is a party plaintiff in an entirely different capacity. It is now seeking no relief for itself under the terms and provisions of the contract or by reason of its breach, but is aiding in the prosecution of the action for the benefit of laborers and materialmen who have not been paid. The judgment rendered in the instant case was solely in favor of The Haynes Hardware Company, a lien claimant. The judgment covered its claim and the claims of other laborers and materialmen which had been assigned to it. The actions were not between the same persons, they were not instituted for the same purpose or relief, and

the judgment is not in favor of the same person. The former action does not constitute *res judicata*. (*McDowell v. Gibson*, 58 Kan. 607, 609, 50 Pac. 870; *Brown v. Parmalee*, 130 Kan. 165, 285 Pac. 563; *Stephenson v. Peterson*, 131 Kan. 690, 293 Pac. 497; *Probst v. Weigand*, 133 Kan. 232, 299 Pac. 611.)

Appellant relies upon decisions in which it was held the first action is *res judicata* if the particular matter litigated in the latter action might have been litigated in the former action. They are not applicable here for the reason the causes of action were not the same and the same matters were not litigated. In the Stephenson case we said:

"Since the issues were not the same, a judgment in that case could not, of course, be *res judicata*. (*Benz v. Hines and Tarr*, 3 Kan. 390; *A. T. & S. F. Rld. Co. v. Comm'rs of Jefferson Co.*, 12 Kan. 127; *McDowell v. Gibson*, 58 Kan. 607, 50 Pac. 870.)" (p. 694.)

In the Probst case we stated:

"Where, however, the actions are on different causes of action, the first judgment is not conclusive on matters which might have been litigated in the former action, but parties are only bound by what was in fact litigated and determined. (*Stroup v. Pepper*, 69 Kan. 241, 76 Pac. 825; *Hudson v. Remington*, 71 Kan. 300, 80 Pac. 568; *Brush v. Rich*, 83 Kan. 531, 112 Pac. 158; 34 C. J. 909, 911.)" (p. 235.)

We do not deem it necessary to extend the length of the opinion by a review of the numerous authorities cited in the exhaustive and able brief of counsel for appellant. They have received our careful attention, but they do not require or justify a reversal of the judgment. Commendable care and study by the trial judge is reflected throughout the voluminous record in this case and we think he reached the correct conclusion.

The judgment is affirmed.

PARKER, J., not participating.