No. 47,254

DALE DAVIS, *Appellee*, v. WILLIAM J. SHAWLER, DEMARIS ELLEN SHAWLER, L. E. SHAWLER, *Appellees*, and PHIL FUNK, *Appellant*.

(520 P. 2d 1270)

Opinion filed April 6, 1974.

*Jack Dalton*, of Mangan, Dalton and Trenkle, of Dodge City, argued the cause and was on the brief for the appellant.

*Thomas C. Boone*, of Hays, argued the cause and was on the brief for appellee Dale Davis.

No appearance for appellees William J. Shawler, DeMaris Ellen Shawler and L. E. Shawler.

The opinion of the court was delivered by

HARMAN, C.: This is a partition action in which rights of a tenant became involved. Construction and application of termi-

nation clauses in a lease form the principal issue. Trial to the court resulted in judgment adverse to the tenant and he has appealed.

There is little dispute as to the facts. L. E. (Eugene) Shawler, William J. Shawler and L. J. Shawler owned as tenants in common a tract of land of approximately 875 acres in Trego county. The property consisted of 320 acres of tillable crop land, 375 acres pasture land and the remainder largely considered waste land. Defendant-appellant Phil Funk commenced farming the land in 1948 under an oral lease. He continued so doing until 1960 at which time the parties entered into a written lease of the property for a period of one year beginning August 1, 1960, and ending July 31, 1961. The lease is said to be in form customarily used in that area for agricultural tracts. It provided for one-third crop rent and $1.50 per acre for the pasture land to be paid the owners. No rent was to be paid for the waste land. Paragraph eight of the lease, the crux of this action, provided:

"This lease is made subject to a sale of the premises, and in case of a sale the purchaser desiring possession, the lessor or purchaser will be entitled to possession on these terms: Where the land is rented for a money rental, by returning to the lessee a sum in proportion to the whole as shall equal the unexpired time of the term; and where land is rented for grain rent the amount to be paid for possession will be estimated by three men, one to be chosen by the lessor, one by the lessee and the third by these two."

Thereafter the parties developed a practice of extensions of the lease by letters signed by the landowners and accepted by the tenant Funk (during this period L. J. Shawler died and his widow, DeMaris Shawler, succeeded to his interest). The first such letter, dated March 19, 1961, by the owners simply stated:

"We would like to extend the 1960-61 lease, to August 1st 1962."

The second letter, dated March 19, 1962, was in like language, extending the 1960-61 lease for an additional one year period or until August 1, 1963. The third letter, dated February 8, 1963, was as follows:

"We, the undersigned would like to extend the 1960-61 lease, to August 1, 1965. In the event that either party does not wish to continue this lease, one year's notice will be given."

To be noted are the facts this lease was for two years and it contained a proviso regarding notice of intention to terminate. The next letter, February 12, 1965, was identical to the last except it provided a three year term ending August 1, 1968.

The fifth letter, May 22, 1968, contained the same terms as the two preceding letters except it stated a two year period ending August 1, 1970, and it *increased the pasture rent to $2.50 per acre.*

Noteworthy at this point is the fact all these letters referred to an extension of the "1960-61 lease".

The next extension letter, dated March 12, 1970, was as follows:

"We the undersigned, would like to extend the 1969-70 lease to August 1, 1972. In the event that either party does not wish to continue this lease, one year notice will be given in advance."

To be noted in the above is the reference to the 1969-70 lease rather than the 1960-61 lease as before.

The final extension letter, dated March 17, 1972, and the one under which the tenant now claims, likewise stated the owners' desire to extend "the 1969-70 lease", this time for a two year period ending August 1, 1974, and it contained the same termination notice proviso.

The next significant event occurred May 31, 1972, at which time L. E. (Eugene) Shawler entered into a contract of sale agreement with plaintiff-appellee Dale Davis whereby he agreed to sell his undivided one-third interest in the tract to Davis. The sale contract was in usual form, providing for a down payment upon execution of the contract and the remainder of the purchase price upon delivery of abstract showing merchantable title. It contained no express provision as to possession but did include this proviso:

"(c) Seller agrees to pay up to and including $250.00 towards the legal expense in order for buyer to obtain possession on or before September 1, 1972, or as soon thereafter as is practicable."

On July 5, 1972, Davis' attorney wrote a letter to the tenant Funk advising of Davis' purchase of L. E. Shawler's interest in the land, calling attention to the provisions of paragraph eight of the 1960-61 lease and requesting possession of the land pursuant thereto on or before September 1, 1972. Funk received the letter July 7, 1972. Upon advice of counsel he declined to surrender possession and continued farming as before. Thereafter he did summer fallowing work, planted 150 acres of wheat and pastured cattle on the grass. He had done some summer fallowing prior to July 7, 1972. Funk received no other notice of termination from anyone. Funk paid his pasture rent due August 1, 1972, for the year ending August 1, 1973, to the two Shawler owners but Davis rejected Funk's tender for his share.

Plaintiff Davis filed this partition action August 21, 1972, naming Funk a party defendant and asking that his interest be determined. Pleadings were filed by Funk and the three Shawlers, joining issue as to Funk's rights as tenant. On November 22, 1972, L. E. Shawler conveyed his interest in the property to Davis by warranty deed pursuant to the contract of sale. Davis previously had received payment for his share of the 1972 wheat crop.

On January 24, 1973, the trial court decreed partition among the three owners, Davis, William J. Shawler and DeMaris Shawler, subject to the tenant's rights but stayed further proceedings in partition pending determination of those rights.

The trial court held an evidentiary hearing February 22, 1973, on the tenant's rights and made its ruling March 1, 1973. It first ruled there was no ambiguity in the lease arrangement governing the parties' rights and that paragraph eight in the 1960-61 written lease was still in effect May 31, 1972, when plaintiff entered into the contract of sale with L. E. Shawler; that execution of this contract amounted to a completed sale of the premises, the contract being fully performed with the subsequent delivery of the deed to plaintiff; the sale was subject to the rights of the tenant under the lease; plaintiff as purchaser acquired the right to terminate the tenant's possession under paragraph eight, which right he exercised by letter dated July 5, 1972. The court commented that owners of real estate by tenancy in common are each equally entitled to all rights of ownership, control and possession in the realty. It held that plaintiff's July 5th letter terminated defendant Funk's tenancy on July 7, 1972, the date of its receipt, Funk was required to surrender possession and, under the doctrine expressed in *Fox v. Flick*, 166 Kan. 533, 203 P. 2d 186, the only rights he had in the land were to harvest the growing milo crop, to be paid the reasonable value of summer fallowing work done by him prior to July 7, 1972 (determined to be $650.00), and to remove certain stock tanks, corrals and electric fencing installed by him (the 1971-72 wheat crop had been harvested prior to July 7, 1972, but the 1972-73 wheat crop had not yet been planted). The court declined to order any reimbursement for advance pasture rent paid by Funk to the two Shawler owners.

Defendant Funk promptly filed a motion to alter and amend the judgment and for new trial. On the hearing of his motion April 10, 1973, it was disclosed that on April 4, 1973, William J. Shawler and DeMaris Shawler had each sold and conveyed his one-third interest

in the land in question to plaintiff Davis. The court overruled defendant's posttrial motions and again declined to order reimbursement for advance rent. Defendant filed notice of appeal but did not post supersedeas bond in the amount of $25,000 as fixed by the trial court. Thereafter defendant, in compliance with an order of execution directed to the sheriff and returned under date of April 25, 1973, removed his personal property from the premises and surrendered possession to plaintiff

Appellant Funk asserts error in several respects, not all of which need be noticed in view of our ultimate disposition of the appeal. We first consider appellant's assertion he was entitled to notice of termination one year in advance before he could be ousted from possession. He contends that by reason of the last two letter agreements the parties "divorced" themselves entirely from the 1960-61 lease, thereby eliminating paragraph eight as a factor. He argues the parties had agreed on new terms which abrogated the the 1960-61 lease, as evidenced by their reference in the last two letters to the "1969-70 lease" rather than to the "1960-61 lease" as before. We cannot agree. Where a series of writings relating to tenancy refer to each other and to a prior written lease of the same property all are to be construed together in determining the intent of the parties. The letter dealing with the 1969-70 tenancy (actually the 1968-70 tenancy) for the first time increased the amount of pasture rent named in the 1960-61 written lease. If that was going to be the agreed rent thereafter, then reference would have to be made to the 1969-70 lease rather than the 1960-61 agreement. The 1969-70 lease did specifically refer to the 1960-61 lease and, as modified, the latter thereby became incorporated into the last two letter agreements; otherwise, an incomplete written expression of the parties intent in several respects would have resulted.

This conclusion virtually disposes of appellant's further argument that the reference in the last two letter agreements to the 1969-70 lease creates an ambiguity which should be resolved in his favor. There simply is no ambiguity in the total leasing arrangement and therefore no occasion for parol evidence to come into play. Appellant also urges that even though it be held that the last two letter agreements were extensions of the 1960-61 lease, then paragraph eight of the old lease is inconsistent with and must yield to the later proviso for termination. He adds that enforcement of paragraph eight would be inequitable. That which appellant really seeks here

is avoidance of the rules expressed in *Nance v. Mullikin,* 131 Kan. 828, 293 Pac. 490, and other authority. In *Nance* one paragraph of a lease stated that a purchaser of the land who desired its possession might terminate the lease and reimburse the tenant; a later paragraph specified the term of the lease, the work to be done and the rent to be paid. In an action resisting a purchaser who desired possession it was urged these paragraphs were inconsistent and the later one as to duration should therefore control.

In rejecting these contentions this court stated:

"The old rule as to giving preference, in the construction of a written instrument, to the last expression therein, where there is an apparent inconsistency or lack of harmony, has been almost abrogated and is not now the most approved rule by which the real intention of the parties to the written instrument is reached. The construction should be based upon the intention of the parties, to be determined from the sense of the entire contract." (p. 831.)

The ultimate holding in *Nance* was:

"Where a purchaser of real estate accepts a deed stating it is 'subject to a farm lease now on the place' and the lease definitely provides that in case of sale of the premises during the continuance of the lease and the purchaser desiring possession, the lessee agrees to surrender the same at once, and further provides for his compensation for growing and immature crops, the purchaser, by taking the conveyance subject to such lease, is not limited to the rights and privileges of the lessor under the terms of the lease, but has the additional right and privilege specifically accorded by the terms of the lease to the purchaser.

"The terms of a lease providing for the immediate surrender of possession of the premises to a purchaser if he desires possession thereof are not inconsistent with a further provision as to duration of term, work to be done and rent to be paid." (Syl. ¶¶ 1, 2.)

The court further declared the fact the compensation provided in the termination clause may be inadequate did not make such provision inconsistent with the one specifying length of time, work to be done and rent to be paid.

In the case at bar it is not necessary for us to construe the proviso for one year's notice but there is no inconsistency between it and the provisions of paragraph eight—in the event of sale to a purchaser desiring possession there is no necessity for any other form of notice of termination. Paragraph eight was for the purpose of creating more attractive sale terms of the property and the notice proviso was designed to promote security of tenure for both owner and tenant where sale had not occurred. The trial court correctly ruled the parties' rights were governed by and subject to paragraph eight of the 1960-61 lease.

Appellant next argues that even though it be held that paragraph eight controls the rights of the parties, the sale of an undivided one-third interest in the property was not a "sale of the premises" as contemplated therein. His argument simply is that such a provision contemplates a sale of the entire premises. Appellee Davis responds only that the trial court found as a fact that there had been a sale and the evidence supports the finding. We have no precedent of our own on the precise legal question but it has received consideration elsewhere. The overall rule is expressed in 51C CJS, Landlord & Tenant, § 93 (3) b. thus:

"Under a provision in a lease for its termination on a sale of the premises, the character of sale necessary to render the provision operative depends on a proper construction of the lease as a whole, viewed in the light of the intention of the parties." (p. 305.)

In *Ewing v. Miles,* 12 Tex. Civ. App. 19, 33 S. W. 235, (writ refused) it was held that a sale by one joint owner of an undivided one-half interest in leased realty did not defeat the right of a tenant to renew his term under a proviso that he could do so unless the "lessors" should sell the "said premises" and in case of sale he should surrender possession thereof to the purchaser at the end of the contract year. The court held that in order to defeat the tenant's right of renewal there must be a sale by the lessors of the entire premises. The same rule was applied in *Frankfurt Finance Co. v. Treadaway,* 159 S. W. 2d 514 (Tex. Civ. App.) (writ refused) although under a somewhat different factual posture. *Agor v. Pitale,* 1 App. Div. 2d 1020, 151 N. Y. S. 2d 463, involved a summary proceeding to recover possession of realty on the ground the tenants were holdovers. In reversing a trial court order awarding the landlords delivery of possession the appellate court held:

"The provision in the lease giving the landlords the right to cancel '[i]n the event of a bona fide sale of the property hereby leased' did not become operative upon the sale of five-sevenths of the demised premises." (p. 1020.)

We are cited to no other authority on the precise issue and find none but we are content with the result reached in the cases mentioned. It is horn-book law, as stated by the trial court, that each tenant in common is entitled to equal use and possession of the property. However, this means no cotenant has the right to exclusive use of the property and his individual right of use is limited by the requirement that such use does not operate to exclude other tenants from enjoying their equal privileges (see 4 Thompson on

Real Property, 1961 Replacement, § 1793). Hence no cotenant can oust his co-owner's lessee. Other limitations on the authority of a tenant in common are expressed in 86 CJS, Tenancy in Common, § 113 c. as follows:

"Ordinarily, a tenant in common may not bind his cotenant by modifying or terminating a lease on the common property without the consent of the cotenant.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

".   .   . Any number less than all of the tenants in common of a particular piece of property cannot, without the authority of their cotenants, enforce a forfeiture of a lease of the common property.   .   .   .

"*Rescission or surrender.* Any number of the cotenants less than all of them are incompetent to bind their nonassenting cotenants by the rescission of a lease of the common property.   .   .   ." (pp. 519-520.)

Here all parties throughout their leasing arrangement treated the premises as a single entity with a single consideration paid for its possession. Until the sale to appellee Davis there apparently were no problems among the co-owners as to management and control of the property, at least none which were irresolvable short of the remedy of partition. After the sale by L. E. Shawler the remaining Shawlers who did not sell were content to have appellant remain in possession under the lease and, although it is of little or no consequence, they in fact considered there had not been a sale of the premises within the meaning of paragraph eight. The interest of these two lessor-owners remained exactly the same after the sale as it was before. Everything considered, we conclude the parties had in mind in paragraph eight of the lease in making the tenant's possession subject to "a sale of the premises" a sale of the entire premises as distinguished from a sale of an undivided fractional share therein, and we so hold. We note in passing appellee Davis and his vendor evidently had misgivings about voluntary surrender of the premises by appellant prior to September 1, 1972, as indicated by paragraph (c) in their contract of sale providing for the seller's payment of $250.00 toward legal expense in securing that possession.

It must be held the trial court erred in treating the sale of an undivided one-third interest as a sale of the premises within the meaning of paragraph eight and in ordering appellant's ouster from the premises as it did. This conclusion renders it unnecessary to consider appellant's further contention that Davis' termination letter of July 5, 1972, was ineffective because at that time he was

only a conditional vendee under a contract of sale, not having received a deed until November 22, 1972.

Although the sale of the undivided L. E. Shawler interest in 1972 did not make paragraph eight operative, that fact does not dispose of this litigation. As already stated, on April 10, 1973, while the trial court still had jurisdiction of this action, it was disclosed that the two remaining Shawler owners had conveyed their interest in the leased property to appellee Davis, thus making him sole owner. We think this, coupled with the previous sale amounted to "a sale of the premises" as of April 4, 1973; Davis as purchaser was still seeking possession, which facts made paragraph eight operative. In other words Davis was then entitled to possession, subject to appellant's right of reimbursement under paragraph eight to be determined upon such possession, reimbursement to include an accounting for advance pasture rent paid to appellees William J. Shawler and DeMaris Shawler.

The judgment is reversed and the cause remanded for further proceedings in accord with the views herein expressed.

APPROVED BY THE COURT.