COBB, STRIBLING & CO. v. THE INSURANCE COMPANY
OF NORTH AMERICA.

1. INSURANCE AGAINST FIRE; *Terms of Policy; General and Special Clauses.* Where an insurance policy provides *in writing* for insuring a "stock of boots and shoes, dry goods, drugs, liquors, and such other goods as are usually kept for sale in a country store," and provides *in printing* that "gunpowder, saltpetre, phosphorus, petroleum, naptha, benzine, benzole or benzine varnish, are positively prohibited from being deposited, stored, or kept in any building insured, or containing any property insured by this policy, unless by special consent *in writing* indorsed on 'this policy, *naming each article specially,* otherwise the insurance shall be void," and accompanying the policy, and a part of it, is the application of the assured, in the body of which he obtains *in writing* special permission to keep one of the prohibited articles, in the following words, to-wit, "Permission given to keep coal oil, not to exceed three barrels at any one time," *held,* that the assured could not`keep gunpowder in any shape or quantity in his store along with his other goods, without the consent of the insurance company in writing, *naming such article specially,* without violating the terms of his policy.

2. CONSTRUCTION OF CONTRACTS OF INSURANCE; *Written and Printed Clauses, Not Repugnant.* The court should not construe the written and printed clauses in a policy of insurance so as to make them conflict with each other, if such a construction can be avoided; but on the contrary, should construe them so as to make them harmonize, if such a construction is possible; and should construe them so as to give to each and all their terms full force and operation. And in construing them the court should also take into consideration the rest of the instrument, the acts of the parties, and all the surrounding circumstances, for the purpose of arriving at the real intention of the parties; for the real intention of the parties is the great end and object in the construction of all instruments.

3. ———— [The natural and proper construction of a policy of insurance containing both written and printed clauses, which clauses, if separately construed, would be in apparent contradiction, explained and illustrated in the opinion.]

*Error from Shawnee District Court.*

IN May 1867, defendant in error, *The President and Directors of the Insurance Company of North America,* issued its policy of insurance to one G. F. Bernstein, to insure him on

his stock of goods in Council Grove. In March 1868 the goods of Bernstein covered by the policy were entirely destroyed by fire. In June 1868, Bernstein assigned the policy, and his claim thereon, to *Cobb, Stribling & Co.*, who commenced this action in March 1869. The case was first tried in 1870, upon an issue of law, and was appealed to this court, and heard and decided in January 1873. (*Cobb v. Ins. Co. of N. A.*, 11 Kas. 93.) Upon being remanded to the district court, a trial upon the issues of fact was had at the December Term 1873. The case hinged upon the question, whether the keeping of *gunpowder*, by Bernstein, was within, or without, the terms of the policy, and if without, then whether the fact that such article was kept by Bernstein in his store rendered the policy void. The terms and clauses of the policy, so far as they relate to the controverted questions, are quoted in the opinion, *infra.* On the trial in the district court, it was shown by plaintiffs' witnesses that Bernstein, the insured, "kept gunpowder in the store in cans containing from one to two pounds each, and in quantities from one to three dozen cans." And the plaintiffs then offered to prove by a competent and experienced keeper of a country store, that gunpowder in the quantities and shape mentioned, was usually kept in country stores. The *Insurance Company* objected to this testimony, and the court ruled that the testimony was inadmissible. Verdict and judgment in favor of defendant, and plaintiffs bring the case here on error.

*W. P. Douthitt*, and *C. M. Foster*, for plaintiffs, contended, that the main question in this case is, whether it is competent to prove by parol what goods were covered by the policy under the head of "such other goods as are usually kept for sale in a country store." We maintain that when it is shown that gunpowder, in the form and amount kept by Bernstein, is an article usually kept for sale in a country store, that in legal effect gunpowder is as much insured as if written in the body of the policy, and that the insurance company cannot complain if the assured keeps the property insured. That

such evidence is admissible, we insist the authorities are uniform and decisive: 16 Gray, 359; 58 N. Y. 292; 17 N. Y. 194; 5 Minn. 492; 12 Mich. 124; 26 Iowa, 66, 67; 8 Conn. 467; 53 Penn. St. 485; 10 Rich. (S. C.) 202; 43 Mo. 434; 5 Ohio St. 450; 31 Md. 219; 36 Md. 122; 2 Pars. Cont. 424; Pars. Merc. Law, 499; Phillips on Ins., § 883; Flanders on Ins. 309; May on Ins. 251.

2. When there is a conflict between the written part of an insurance policy, and the printed portion, greater effect is given to the written part, as the written words are the immediate language of the parties, and the printed words the general formula adapted equally to their case and to that of all other contracting parties upon similar occasions and subjects: 4 East, 130; 2 Hall, 665; 47 N. Y. 603; 2 Pars. Cont. 516; Phillips on Ins., § 125; Bliss on Life Ins. 620; Angell on Ins. 11; 1 Arnould on Ins. 80; Flanders on Ins. 70, 79; 7 Chi. Leg. News, 31.

3. In order to defeat the policy, the defendant must prove that there was gunpowder in the store at the time of the fire. A breach of the condition only suspends the risk. It is not a warranty on the part of the assured : 41 Ill. 298; 50 Ill. 129.

*A. L. Williams*, for defendant, submitted, that the only issue in this case is, was the assured authorized to keep gunpowder at all? The defendant affirms that he was not. If the policy absolutely prohibited the keeping of gunpowder in any quantity, it is surely immaterial whether it was kept in such quantities as are usually kept in a country store or not. If the policy did authorize it, the defendant is the the sufferer; for, by excluding all testimony, defendant takes from itself the right to make an issue on the question as to whether the quantity was unusual or not. The question is a very important one, and of great interest to all the insurers and insured in the state. A good deal of stress is laid upon the modern rule of construction that, when the written and printed parts of a contract are repugnant to each other, the

written governs.   It seems to have been forgotten by counsel, however, that what is here called "a rule," is merely an aid to a very ancient rule, namely, that where two parts of a contract (and whether written or printed is of no consequence) are repugnant to each other, the one which shall give effect to the intention of the parties is to be chosen, and the other rejected.   The fact must not be overlooked, that this new rule destroys no old one, interferes with no old one. The same rules of construction which governed when it was introduced are of full force to-day.   It is still true that where effect can be given to all parts of a contract, it must be done. The conflict must be the same in a contract partly printed and partly written, as in one entirely in writing, to authorize a court to annul one clause as repugnant to some other.   The conflict spoken of means conflict, and must be so plain that the clauses in question cannot be reconciled.   It means, that a clause in its entirety conflicts with some other clause in its entirety—not merely that one clause modifies or explains another.   The two clauses as a whole must be repugnant to each other so that to give effect to one requires the annulling of the other.   The true rule on this subject may be found in §§ 660, 661, of Story on Contracts, and in note 1 to page 20, 2 Parsons on Contracts.   If the policy in this case, after insuring "such a stock of goods as is usually kept in country stores," had contained a clause (either written or printed) that nothing in the policy should be held as permitting the insurance of "such a stock of goods as is usually kept in a country store," a repugnancy would have existed.   If, as the fact is here, the insurance was upon "such a stock as is usually kept in a country store," *with a proviso*, that certain dangerous goods, although usually kept in country stores, were excepted from the general provision, no repugnancy would exist.   The condition merely limits and explains the general clause. 5 Minn. 492.   [Counsel reviews all the cases mentioned in the opinion of the court, *infra*, and concludes that "this case presents questions never before brought before an American court."]

2. The plaintiffs are estopped from denying the construction, that there is no repugnancy between the written and printed clauses in the policy. Accompanying the policy, and a part of it, is an application of the assured for insurance. By the terms, both of the policy and the application, they are considered as one contract. This application, which is signed by the assured, contains a statement of the property to be insured, answers to various questions about the property, which statements and answers are his warranty, and an application for the insurance. On his application he obtains *written permission* to keep one of the prohibited articles in these words: "Permission given to keep coal oil, not to exceed three barrels at any one time." Does not this show conclusively that he knew that the clause was operative on his contract? *Expressio unius est alterius exclusio.* By his act in obtaining consent in writing to keep one article usually kept in country stores, but which was prohibited by the printed clause, the assured recognized the validity and full force of that clause, and the defendant, in carefully specifying in writing the kind of oil and the quantity to be kept, showed that it had no intention of waiving it. If there were any force in the construction of the policy contended for by plaintiffs, this act of the assured would deprive them of its benefit.

3. Plaintiffs contend that "to defeat the policy it must be shown that gunpowder was kept at the time of the fire; that a breach of the condition only suspends the risk." The proposition has no force either in fact or in law. The plaintiffs' testimony shows the description of goods lost, enumerates among the articles kept by the assured this very gunpowder. And in the next place no authority exists, none can be found, which says or intimates that under such a policy as this the keeping of any of the prohibited articles only suspends the risk during the time the article is so kept. The true rule, on this question, is stated in May on Insurance, p. 265.

The opinion of the court was delivered by

VALENTINE, J.: This action was brought by Cobb, Stribling & Co., as assignees of G. F. Bernstein, against the In-

surance Company of North America, for the loss of a certain stock of goods insured by said company, and destroyed by fire. We have once before had this case under consideration, and we then decided such questions as were then presented to us. (*Cobb v. Ins. Co. of N. A.*, 11 Kas. 93.) A new question is now presented, and that question is, whether Bernstein had a right under his insurance policy, and without any further or other permission from the insurance company, to keep gunpowder for sale in his store, along with his other goods, in such quantities and in such shape as it is usually kept for sale in country stores. The insurance policy, so far as it has any application to this question, provides for insuring Bernstein's "stock of boots and shoes, dry goods, drugs, liquors, and such other goods as are usually kept for sale in a country store;" and that " gunpowder, saltpetre, phosphorus, petroleum, naptha, benzine, benzole or benzine varnish, are positively prohibited from being deposited, stored, or kept in any building insured, or containing any property insured by this policy, unless by special consent in writing indorsed on this policy, naming each article specially, otherwise the insurance shall be void." Accompanying the policy, and a part of it, is the application of the assured, in the body of which he obtains, *in writing*, special permission to keep one of the prohibited articles, in words following : "*Permission given to keep coal oil, not to exceed three barrels at any one time.*"

The first paragraph or clause above quoted from the policy is in *writing*, and the second is *printed*. Therefore, if there were any real and irreconcilable conflict between the two paragraphs, the first would, according to well-known rules of construction, be of controlling force in determining what the real intentions of the parties were. But we should not construe said paragraphs or clauses so as to make them conflict with each other, if such a construction can be avoided. On the contrary, we should construe them so as to make them harmonize, if such a construction is possible; and should construe them so as to give to each and all their terms full force and operation. And in construing them we

should also take into consideration the rest of the instrument, the acts of the parties, and all the surrounding circumstances. By this means we can probably arrive at the real intention of the parties; and the real intention of the parties is the great end and object in the construction of all instruments. The two most natural constructions that can be given to said paragraphs, (provided it be attempted to make them harmonize,) would seem to be about as follows: *First*—The insurance company insures Bernstein's "stock of boots and shoes, dry goods, drugs, liquors, and such other goods, [including "gunpowder, saltpetre, phosphorus, petroleum, naptha, benzine, benzole or benzine varnish,"] as [the same] are usually kept for sale in a country store," provided, that "gunpowder, saltpetre, phosphorus, petroleum, naptha, benzine, benzole or benzine varnish [except "as" they "are usually kept for sale in a country store"] are positively prohibited from being deposited, stored, or kept in any building insured or containing any property insured by this policy unless by special consent [of the company] in writing indorsed on this policy, naming each article specially." *Second*—The insurance company insures Bernstein's "stock of boots and shoes, dry goods, drugs, liquors, and such other goods [including "gunpowder, saltpetre, phosphorus, petroleum, naptha, benzine, benzole or benzine varnish] as [the same] are usually kept for sale in a country store," provided however, that as to "gunpowder, saltpetre, phosphorus, petroleum, naptha, benzine, benzole or benzine varnish [said insurance does not extend except by the "special consent" of the company "in writing indorsed on this policy, naming each article specially," and said articles] are positively prohibited from being deposited, stored or kept in any building insured or containing any property insured by this policy, unless by special consent [of the company] in writing indorsed on this policy, naming each article specially." Other constructions might also be given to said paragraphs; but we think the second one which we have given is the most natural, and it undoubtedly has this great advantage over all

others—it is the one which the assured himself gave to said paragraphs when he made his application for the insurance policy in which they are contained. If he had supposed that he could keep "coal oil" for sale without special permission from the insurance company, he would not have taken any trouble to obtain such permission. The reason for using the words or terms that the parties did use in said policy, instead of using some other words or terms, we think is obvious. It was evidently the intention of the parties, as we think, that every article of goods such as are usually kept for sale in country stores should be insured, either conditionally, or absolutely. But these articles are so various in kinds, and so unlimited in numbers, as to be practically infinite; and to name each article separately would be practically impossible. Then how are they to be named or designated? Some of them, as we have before stated, are insured absolutely, while others are insured only conditionally or contingently. Then how are these two classes to be designated? Probably the only easy way of doing it would be to do it in the very manner that it was done in this particular case. First, use general language embracing all articles in both classes, and then by way of exception, limitation, or modification use special terms, naming each particular article belonging to the smaller class. This can easily be done in this particular case, for in this case only a few articles, to-wit, "gunpowder, saltpetre, phosphorus, petroleum, naptha, benzine, benzole or benzine varnish," belong to the smaller class. This use of language is common both in contracts, and in statutes. General language is first used embracing a large class of things, and is used with reference to such things absolutely and unconditionally. And then special words or terms, embodying an exception, a modification, a limitation, a proviso, or some condition, is used with the intention of qualifying or explaining the previous general language. Bonds and mortgages in contracts, and provisos and saving-clauses in statutes, are good illustrations of this use of language. It is also easy to be understood why the first paragraph above quoted from

the policy of insurance is in *writing*, and why the second is *printed*. Insurance companies always use printed policies, with certain blank spaces left in them to be filled up when issued according to the circumstances of each particular case. And insurance companies, like the defendant in error, generally insure all kinds of personal property which they may be asked to insure, whether the same is kept in stores or somewhere else, whether the same is kept for sale or for use, or for some other purpose, and whether the same belong to a merchant, a mechanic, a professional man, a farmer, or to some other person. Hence a blank space is always left in the printed policy for the description of the property insured, which blank space must be necessarily filled up in writing when the policy is issued. But this is not so with reference to "gunpowder, saltpetre," etc. They are always dangerous articles, and are therefore, and should always be sufficiently provided for in the printed policies. Or at least, they should be and are always sufficiently provided for so far as the insurance company is concerned. Such an insurance policy as we are now considering has never before received judicial construction. What force and effect should be given to the words, "naming each article specially" contained in this policy, have never before been judicially determined. Hence we are left to grope our way in the dark so far as any exact judicial precedents are concerned. In certain cases, where the said words, "naming each article specially," have been omitted from the policy, courts have said that the insurance by the company by a clause in writing of "all such goods as are usually kept for sale in a country store," is a "consent by the company in writing indorsed on the policy" to keep the prohibited articles in quantities and in the shape in which they are usually kept for sale in country stores. But no court has ever decided that such an insurance was a consent to keep such prohibited articles *"naming each article specially."* In some of said cases it has also been said by the court, in delivering the opinion, that there was a repugnancy between the written and the printed

clauses; but such of course has never been said in a case like
the one at bar.   In said cases the consent to keep the pro-
hibited articles could be given and was given *in general lan-
guage;* but in this case the consent must be given by "naming
each article specially."   If the written clause in this case had
so read as to insure Bernstein's "stock of boots and shoes,
dry goods, drugs, liquors," "gunpowder, saltpetre, phos-
phorus, petroleum, naptha, benzine, benzole or benzine var-
nish," "and such other goods as are usually kept for sale in
a country store," then this case would be analogous to those
cases, for the written clause in this case would then mention
the prohibited articles in the very language required by the
printed clause, just as the written clause did in the cases to
which we have referred.   We do not think that there is any
repugnancy in this case which the law will recognize between
the written and printed clauses.   Many analogous illustra-
tions might be given, and we shall give two or three.   Sup-
pose that the granting part of a mortgage were written, and
conveyed (as that part of the mortgage usually does) an ab-
solute title, and that the defeasance clause were printed: then,
if the mortgagee should bring an action on the mortgage,
would it be held that there was a conflict between the written
and the printed parts of the mortgage, and that the printed
part was void?   Would it be held that as the written part
of the instrument was an absolute grant of the premises, and
the printed part empowered the mortgagor, on the payment
of a sum fixed, to have the instrument canceled, there was a
conflict, and therefore the printed part should be disregarded,
and the written treated as an absolute conveyance?   And
take the case of an ordinary penal bond, or a recognizance;
and suppose that the obligation is written, and the conditions
printed: the obligor, by his bond, admits that he owes, and
binds himself in writing to pay the obligee a sum certain.
By the condition, which is printed, he seeks to explain that
he does not owe any money, and will not owe any, unless he
fails to do a particular thing at some future time.   Now
there is as much conflict between the written and the printed

Cobb v. Insurance Co.

parts of this bond, as there is in the contract at bar; but would any court if called on to pass upon this bond, say that the printed part, being inconsistent with the written, must be ignored, and the obligor held to the payment of the money as upon an absolute promise to pay? And again: Suppose that a farmer should make an agreement to sell "all the corn then on his farm, being about five thousand bushels," "*provided*, however, that he might if he chose retain two hundred bushels thereof for his own use." Would any person suppose that there was an irreconcileable conflict between the two clauses, and that if the first were in writing, and the second printed, that the second must be held to be void?

After a careful consideration of the case, we have come to the conclusion that the printed clause in the policy in this case is not in conflict with any written clause therein. Or at most, there is no such conflict between any of the clauses of said policy as will render said printed clause void. The conflict, if any, is only to the extent that one clause modifies the other. Therefore, as *gunpowder* was not insured, except upon a condition precedent, which has never been fulfilled, and as it was absolutely prohibited from being kept upon the premises except upon a condition subsequent which has never been fulfilled, and as the assured did keep gunpowder on the premises in violation of the express terms of his insurance policy, we think the policy was rendered void in accordance with its own express terms. We have examined many authorities supposed to apply more or less nearly or remotely to this case, among which are the following, cited by the plaintiffs in error: *Phœnix Ins. Co. v. Taylor*, 5 Minn. 493; *Whitmark v. Conway Fire Ins. Co.*, 16 Gray, 359; *Niagara Fire Ins. Co. v. DeGraff*, 12 Mich. 124; *Harper v. Albany Mut. Ins. Co.*, 17 N. Y. 194; *Bryant v. Poughkeepsie Mut. Ins. Co.*, 17 N. Y. 200; *Harper v. N. Y. City Ins. Co.* 23 N. Y. 441; *Pindar v. Kings Co. Ins. Co.*, 36 N. Y. 648; *Steinbach v. Lafayette Fire Ins. Co.*, 54 N. Y. 90; *Hall v. Ins. Co. of N. A.*, 58 N. Y. 292; *Archer v. Ins. Co.*, 43 Mo. 434; *Wash. Ins. Co. v. Mer. & Man. Ins. Co.*, 5 Ohio St. 450; *Franklin*

*Fire Ins. Co. v. Updegraff*, 43 Penn. St. 350; *Citizens Fire Ins. Co. v. McLaughlin*, 53 Penn. St. 485. And the following cited by defendant in error: *Steinbach v. Ins. Co.*, 13 Wallace, 183; *People's Ins. Co. v. Kuhn*, 1 Cent. Law. Jour. 214; [This case will probably also be reported in 9 Heiskell's Tennessee Reports]; *McComber v. Howard Fire Ins. Co.*, 7 Gray, 257; *Whitmarsh v. Charter Oak Ins. Co.*, 2 Allen, 581; *Commonwealth v. Hide & Leather Ins. Co.*, 112 Mass. 136. Now we think that the printed clause in the present insurance policy may be held to be *valid* without conflicting with any of the foregoing decisions; but it could not be held to be *invalid* without conflicting with the last five of said decisions.

The judgment of the court below will be affirmed.

BREWER, J., concurring.

HORTON, C. J., not sitting in this case.