No. 36,872

DOROTHY DEAL HARRISON, *Appellee*, v. THE FARMERS & BANKERS LIFE INSURANCE COMPANY, *Appellant*.

(181 P. 2d 520)

ISAAC N. WILLIAMS, judge. Opinion filed June 7, 1947.

*Roetzel Jochems,* of Wichita, argued the cause, and *W. D. Jochems, J. Wirth Sargent, Emmet A. Blaes* and *Robert G. Braden,* all of Wichita, were with him on the briefs for the appellant.

*Glenn Porter,* of Wichita, argued the cause, and *Getto McDonald, William Tinker, Arthur W. Skaer* and *Hugh P. Quinn,* all of Wichita, were with him on the briefs for the appellee.

The opinon of the court was delivered by

BURCH, J.: The appeal in this case concerns construction of the provisions of an endowment insurance policy. The question involved is whether the insurer was obligated to make a lump sum payment of the principal amount or required to make payments in periodical installments. The trial court held that the insurer was obligated to pay the proceeds of the policy in a lump sum. The insurance company contends that it was morally and legally obligated to pay the proceeds in periodical payments even though a lump sum payment would be to its financial advantage. The case was submitted to the trial court upon the pleadings and facts stipulated by the parties in the opening statements of respective counsel therefor. The pleadings are short and clear.

The petition alleged that on the 24th day of December, 1935, the defendant, for an agreed consideration, executed and delivered to the plaintiff a life insurance policy covering the life of the plaintiff, in the principal sum of $22,900; that under the terms of the policy it was provided that should the insured be alive on the 24th day of December, 1945, the defendant would pay such sum for the surrender of the policy provided all premiums had been paid in full as they became due. The petition further alleged that the policy contained a general provision setting forth that the insured might elect, revoke or change any payment option in the policy by filing a written request therefor with the defendant company; that the plaintiff filed a written election to accept a payment option which required the company to pay the principal sum of $22,900 in cash upon surrender of the policy; that the plaintiff had paid all the premiums as they became due and had surrendered the policy in connection with the written election but that the defendant had failed and refused to pay the principal amount in a lump sum.

The answer of the defendant admitted the execution of the policy and a photostatic copy of the policy was attached as a part of the answer. In addition the answer alleged that the consideration for the policy was paid for by the father of the plaintiff and that a rider attached to the policy, which stated that payment should not be made in a lump sum, was attached at his special instance and request. Attached to the answer, as another exhibit thereto, was a supplemental contract which consisted of a written acknowledgment by the defendant company that it was obligated to pay to the plaintiff $99.61 each month until the date of her death. The supplemental contract also contained a provision to the effect that should the death of the plaintiff occur before she had received 120 installments, in the named amount, that the balance of the 120 installments would be computed at the rate of 3½ percent per annum, compounded annually and paid in one lump sum to her estate. The supplemental contract set forth that it was offered in accordance with the terms and provisions of the designated policy. The reply of the plaintiff denied all new matter set forth in the answer and alleged that the plaintiff had not accepted or agreed to the terms of the supplemental contract.

The opening statements by counsel for the respective parties developed that no significant factual controversies existed between the litigants. Counsel for the plaintiff admitted that a certain pay-

ment option "B" in the policy, which provided for periodical payments, was made irrevocable at the instance and request of the plaintiff's father, T. M. Deal, but insisted that such fact was of no consequence because the policy had been entered into solely between the defendant and the plaintiff. Plaintiff's counsel also conceded that a large percentage of the premium money had been furnished by T. M. Deal but stated that all of the premium payments had been made by the plaintiff to the defendant and that, therefore, the source of the money was of no importance because the policy contract had been entered into only between the two parties involved in this action. Insofar as the irrevocable feature of the option "B" payment provision was concerned, counsel for the plaintiff contended that the defendant was not entitled to rely thereon because the defendant did not claim any financial interest in the method of payment or that any less or more amount in premiums had been required by the defendant by reason of the irrevocable periodical payment provision in the policy. Counsel for the defendant admitted, in effect, that payment in a lump sum would be to the financial advantage of the defendant but insisted that the provisions of a typewritten rider attached to the face of the policy controlled the controversy. Counsel for the plaintiff informed the trial court that the plaintiff was in need of all of the money at once because she and her husband had obligated themselves to purchase a large amount of stock in a company which had been operated by the plaintiff's father and that the full amount of the money was required in order for the plaintiff to retain control of such company. The trial court held, in substance, that since the defendant had admitted it did not have any financial interest in retaining a large portion of the proceeds of the policy for the purpose of making periodical payments, the irrevocable provision was revocable and that under a provision in the policy which permitted the plaintiff to revoke or change a payment option the plaintiff was entitled to elect to recover the full cash value of the policy in a lump sum. Judgment was entered for such amount.

The foregoing develops the necessity for examination of the pertinent policy provisions. We observe that the written application for the policy, the typewritten rider attached thereto, and the printed policy, all were conceded to be the integral parts of the entire insurance contract. The application for the policy contained a clause reading as follows:

"How are proceeds to be paid? . . . —in the event the insured is living at maturity of endowment, the proceeds are to be paid under Option B, 10 years certain *irrevocably* and with the spend thrift clause." (Emphasis supplied.)

Option (*b*) in the policy was entitled "Monthly Income for Life" and provided that the company would pay equal monthly installments for a definite number of years (admittedly ten years in this case) and as long thereafter as such payee (the plaintiff) might survive. In compliance with the application for the insurance the defendant issued the policy and attached on the face of the second page thereof a typewritten rider which read as follows:

"By this rider, attached to and made part of Policy No. 94354, and in accordance with the written request of the Insured, contained in the application for this Policy, a copy of which is hereto attached, it is hereby agreed that, should this Policy mature as an Endowment, *the net proceeds of this Policy shall not be paid to the Insured in one lump sum but shall be paid as provided* in Option (*b*) in the 'Optional Settlements' provisions, in equal monthly instalments for ten years certain and as long thereafter as the payee may survive." (Emphasis supplied.)

The last page of the policy pertained to optional settlements and thereon under the heading, "General Provisions," in small print appeared the following:

"The Insured may elect, revoke or change an option by written request filed in the Home Office of the Company, accompanied by the Policy for endorsement."

1. Counsel for the defendant invoke the rule that a written clause must prevail over inconsistent printed provisions of an insurance policy. In support of such statement they cite 44 C. J. S. 1162, § 295, which reads as follows:

"A policy which is partly written and partly printed should, if possible, be so construed as to give effect to all its parts; but, if the different parts are irreconcilable, the written, as well as stamped or typewritten, parts will prevail over the printed.

"In accordance with the rules relating to the construction of an insurance contract as an entirety, discussed infra § 298, a policy which is partly written or typewritten and partly printed should be so construed, if possible, as to reconcile and give effect to all of its parts; but, if there is an irreconcilable conflict between the different parts, the written part will control and prevail over the printed, as will also stamped or typewritten parts."

In support of the text defendant cites *Hickey v. Dirks*, 156 Kan. 326, 133 P. 2d 107; and *Haynes Hardware Co. v. Western Casualty & Surety Co.*, 156 Kan. 356, 133 P. 2d 574, from which the following is quoted:

"Where an irreconcilable conflict exists between general provisions of a contract and particular portions written into the contract preference is given to the latter for the purpose of ascertaining the intention of the parties." (p. 362.)

The general rule to such effect is well established and has been repeatedly followed in construing conflicting provisions of insurance contracts. (See Fourth Decennial Digest, Insurance, Key No. 149, and *Aetna Ins. Co. v. Houston Oil & Transport Co.*, 49 F. 2d 121, certiorari denied *Houston Oil & Transport Co. v. Aetna Ins. Co.*, 284 U. S. 628, 52 S. Ct. 12, 76 L. Ed. 535.) Counsel for the plaintiff virtually concede the general rule but contend that it is not applicable because the problem in the present case is not that of an indefinite provision in a printed form which is clarified or defined by a written insertion. They contend that the policy provision reading, "The insured may elect, revoke or change an option by written request . . ." is unambiguous and that the printed and written portion should be construed to the end that the conflict between the two portions be resolved to the extent that one clause modifies the other (citing *Cobb v. Insurance Co.*, 17 Kan. 492). We are unable to agree with counsel for the plaintiff in such respect. As we view the entire insurance contract, the printed clause last quoted is in direct conflict, not only with the typewritten application for the insurance, which was made a part of the contract and read "irrevocable," but also with the typewritten rider which read, "the net proceeds of this Policy shall not be paid to the Insured in one lump sum but shall be paid as provided in Option (*b*) . . ." Counsel for the plaintiff, in effect, would have us strike from the application and the rider the significant language just quoted and hold that it was necessary for the defendant company to negative again the printed provision relative to the insured's right to revoke or change an option payment by deleting such provision from the contract or by specifically stating in the rider or the application that such provision should be considered null and void. In support of such a contention they rely upon the rule that when the entire policy is prepared by one party, any divergence of language therein is to be construed against the drawer of the instrument. We are of the opinion that in the present case it was unnecessary for the defendant company to curtail further or to negative the settlement option provision by inserting in the application or the rider more specific provisions to such effect. When two typewritten provisions of an insurance contract conflict with one printed provision thereof, the rule

that greater effect must be given the typewritten words unquestionably prevails, and the printed provision should be considered as deleted or omitted from the contract. Consequently, further consideration of the case will be predicated upon the conclusion that the policy, in effect, did not contain any provision which permitted the plaintiff to revoke or change the wording therein, that the payment provisions were "irrevocable" and that "the net proceeds of this Policy shall not be paid to the Insured in one lump sum but shall be paid as provided in Option (b)."

2. The principal contention of counsel for the plaintiff is that the "irrevocable" nature of the contract does not sustain the defendant company in the present case. We quote from plaintiff's brief:

"We have therefore only one real issue—does the use of the word 'irrevocable' in connection with the appellee's designation of payment under Option (b) in the 'optional settlements' provision bar a recovery?"

In support of a negative answer to such a question, the plaintiff contends that since no contractual relation was entered into between T. M. Deal and the defendant, even though the application did provide it was irrevocable, such provision had no effect whatever and that the plaintiff had the right to revoke the provision as between her and the company. It is contended the same rule applies that is applicable to the granting of an irrevocable power of attorney because the defendant was not prejudiced and had no interest which was affected by a change in the method of payment of the proceeds. In other words, the plaintiff contends that since the defendant conceded that it was not concerned with how the payment should be made, from a financial standpoint, the plaintiff had a right to demand payment in a lump sum regardless of what restrictions may have been inserted in the insurance contract relative to the method of payment. In such circumstances plaintiff's counsel insists that the controlling rule or principle is the same as that which is applied in cases of irrevocable powers of attorney, irrevocable provisions in proxies and other irrevocable agency contracts wherein the power or authority granted is not coupled with an interest. In such cases it is frequently said that even though a power is designated as irrevocable it is in its very nature revocable when it concerns the interest of the principal alone. In support of the contention we are cited the case of *Life Association v. Boyer*, 62 Kan. 31, 61 Pac. 387, from which the following is quoted:

". . . All powers of attorney are revocable by the donor of the power

except when coupled with an interest in the donee. Though they be by their terms irrevocable, they nevertheless may be revoked by the donor, except in cases where the donee has an interest in their continuance." (p. 40.)

In addition to many cases from other states holding to such effect plaintiff's counsel cite the general rule stated in 2 Am. Jur., Agency, 39, § 38, which reads as follows:

"Ordinarily the principal may revoke at any time a power of attorney constituting a mere agency. Such a power is in its very nature revocable when it concerns the interest of the principal alone. If it is a mere naked authority not coupled with an interest, it is revocable at the will or even caprice of the principal, though the instrument itself contains an express declaration of irrevocability."

Counsel for the plaintiff, however, fail to cite any cases in which the rule has been applied to the construction of an insurance policy and the question arises whether the agency rule, applicable when the agency is not coupled with an interest, applies to the construction of an insurance contract.

This court is of the opinion that the rule permitting an irrevocable agency relationship to be revoked should not be applied for the purpose of altering the provisions of an insurance contract. An insurance contract is not created by one party only executing a declaration of delegated authority to another party. The consideration for an insurance policy is not paid solely for the purpose of compensating an agent. There is a distinction between a mere revocation of representative authority and an attempted cancellation of contractual obligations. When one party simply designates another as his representative, as between the parties, the principal does not part with all power to direct and control subsequently the acts of the agent. When such a status exists, the principal can direct his designated representative to do nothing and therefore, even when the power of the agent is made irrevocable, it in effect can be revoked unless the agent has acquired an interest which he has a right to protect. Ordinarily, when only a representative relationship exists, not coupled with any interest, the relationship can be terminated without further obligation on the part of either party. But when the relationship of insured and insurer is created the relationship can be terminated only in compliance with the provisions and obligations of the policy. The nature and extent of such obligations depend upon the provisions of the insurance contract. Thus, in the present case the defendant company was obligated to pay

the proceeds of the policy in compliance with the policy provisions. It would be unwise to hold that merely because an insurance company is not financially interested in what disposition is made of the proceeds of a policy, the insured may direct a disposition of the proceeds contrary to the policy provisions. Upon such reasoning an insured would be permitted to direct that an irrevocable beneficiary clause contained in the policy be disregarded or that a policy which provides against assignment be assigned. If such were the rule, it would be entirely unsafe for a designated irrevocable beneficiary to advance moneys for the purpose of paying premiums upon policies and many inequitable consequences might develop. Equity frequently intervenes for the purpose of directing what disposition shall be made of the proceeds of insurance contracts even in instances wherein those entitled to a portion or all of the proceeds of the policy are not the insured and the insurer. (See *Kansas City Life Ins. Co. v. Wilkinson,* 125 Kan. 305, 264 Pac. 37; *Tivis v. Hulsey,* 148 Kan. 892, 84 P. 2d 862, and 46 C. J. S. 60, § 1173.) The inherent dangers which might develop to the rights of third parties who are indirectly interested in the fulfillment of insurance contracts require the application of the rule to the effect that liberal construction does not apply where the language in the contracts is unequivocal and unambiguous and is sufficiently plain to express the intent of the parties originally interested, or where an ambiguity in provisions disappears when the ambiguity has been removed by judicial construction. (See *Order of United Commercial Travelers v. Knorr,* [C. C. A. Kan.] 112 F. 2d 679.) As hereinbefore stated, the typewritten provisions of the application and of the rider removed from the policy any ambiguity created by reason of the printed provision in the policy which permitted the insured to revoke a payment option. Consequently, the payment provisions contained in the application and in the rider must prevail and be strictly construed in compliance with the original intent of the parties. The plaintiff does not contend the contract was misrepresented or misunderstood. When the plaintiff accepted the policy which provided by rider that the payment should not be made to her in a lump sum she divested herself of the right to have the payment made in such manner.

The judgment of the district court is reversed.

Hoch, J., not participating.