W. Virgil WISE and Anita Wise, Plaintiffs-Appellees,

v.

WESTCHESTER FIRE INSURANCE COMPANY, Defendant-Appellant.

No. 71–1152.

United States Court of Appeals, Tenth Circuit.

July 13, 1972.

James B. Zongker, of Render, Kamas & Kelly, Wichita, Kan., for plaintiffs-appellees.

Darrell D. Kellogg of Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, Kan. (Larry A. Withers, Wichita, Kan., with him on the brief), for defendant-appellant.

Before MURRAH, SETH and BARRETT, Circuit Judges.

MURRAH, Circuit Judge.

This diversity action was brought by Mr. and Mrs. Virgil Wise of Kansas, to recover damages due under the uninsured motorist coverage allegedly provided in a policy of insurance issued to Mr. Wise by Westchester Fire Insurance Company, a New York corporation. Mrs. Wise was the natural mother and Mr. Wise the stepfather of Ricky Eugene McCowan, who died as a result of being struck by an automobile driven by an uninsured motorist during the time the Westchester policy was in effect. E. E. McCowan, the natural father of the decedent, obtained a judgment against the uninsured motorist in a Kansas state court in the amount of $26,500. The state court apportioned this judgment between McCowan and Mrs. Wise as the decedent's natural father and mother. In the present suit, Westchester contends that the policy issued to Mr. Wise did not provide uninsured motorist coverage, hence no liability on the state court judgment.

Upon trial of this case without a jury, the Federal District Court found the policy to be unclear and ambiguous and admitted extrinsic evidence in the form of testimony to clarify the intentions of the parties with regard to it. The court held that the policy when construed in favor of the insured provided uninsured motorist coverage and entered judgment in favor of Mr. and Mrs. Wise in the full amount of the state court judgment, plus interest and costs. The trial court subsequently amended its findings and judgment to limit recovery by Mrs. Wise under the policy to $15,750 with interest, in conformity with the state court's apportionment of the judgment. We affirm that judgment.

The testimony elicited at trial revealed that in 1967, Mr. Wise had purchased an automobile owned by the

Haysville State Bank, Haysville, Kansas. The Bank financed the purchase and requested that Wise apply for insurance on the automobile with F. G. Stearns & Son, an insurance agency with offices located in the Bank. The only person with whom Wise had any contact pertaining to issuance of the Westchester policy was Alfred Sherwood, the car salesman with whom he had dealt. Sherwood obtained Mr. and Mrs. Wise's signatures on a blank application form and recorded the information necessary for completion of the form. The trial court found that Wise specifically requested uninsured motorist coverage at the time he signed the application.[1] The car salesman testified that he notified the Stearns agency of this request and was informed by an unidentified employee that "it would be all right."

The declarations page of the Westchester policy which was subsequently issued to Wise is divided into seven items. Our concern is only with item 3 which describes the various types of coverage available under the policy. Item 3 provides:

"The insurance afforded is only with respect to such of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be stated herein, subject to all the terms of this policy having reference thereto."

Directly under this statement is a column captioned "COVERAGES" containing ten lines lettered "A" through "J," each line bearing the generalized title of one of the various forms of insurance coverage available. To the right of this column are separate columns in which the limits of liability and amounts of premium for the respective coverages may be indicated. The eleventh line of the "COVERAGES" column bears the phrase, "Endorsements (IDENTIFY BY FORM NUMBERS)." Typed on that same line in the column entitled "LIMITS OF LIABILITY" are the form numbers of the two endorsements originally attached to the policy: GU8881a and AL8845a. Item 3 also contains the following statement stamped diagonally across the "COVERAGES" column in red capital letters:

"THIS CERTIFIES THAT THIS COMPANY HAS ISSUED UNDER THE ABOVE NUMBERED POLICY INSURANCE AGAINST ONLY SUCH AND SO MANY OF THE COVERAGES AS ARE INDICATED BY A SPECIFIC PREMIUM IN WRITING SET OPPOSITE THERETO. THIS COPY OF THE ORIGINAL POLICY IS SUBJECT TO ALL THE CONDITIONS AND CLAUSES WHICH ARE NOW OR MAY HEREAFTER BE ATTACHED TO THE ORIGINAL POLICY. . . . "

Specific premium charges and limits of liability are indicated in item 3 for coverage D—Comprehensive, Personal Effects—and coverage E—Collision. No premium charges or limits of liability are indicated for coverage J—Family Protection—the category for uninsured motorist protection.

Attached to the policy is endorsement number AL8845a, entitled "Amendment of Family Combination Policy—Kansas," which is the uninsured motorist coverage endorsement in question. The issuing language on this endorsement reads:

"This endorsement, effective 4–11–67 (12:01 A.M., standard time), forms a part of policy No. FAC634538 issued to W. Virgil Wise by Westchester Fire Insurance Company."

Following this language is a caption set out in conspicuous bold print:

"THIS FORM PROTECTS INSUREDS WHO ARE NOT CONTRIBUTORILY NEGLIGENT AGAINST BODILY INJURY CAUSED BY NEGLIGENT UNIN-

---

1. In 1967, when these events took place, K.S.A.1971 Supp. 40–284, making uninsured motorist coverage mandatory unless specifically rejected in writing by the insured, was not yet in effect.

SURED AND HIT-AND-RUN MOTORISTS."

The endorsement bears the signature of John Trout as "Authorized Representative, F. G. Stearns & Son."

Trial testimony also indicated that at the time the policy in question was issued Westchester was in the practice of attaching endorsement AL8845a to all of its automobile insurance policies because of the impending effectiveness of K.S.A.1971 Supp. 40–284, making uninsured motorist coverage mandatory unless specifically rejected in writing by the insured. No attempt was made, however, to explain why the endorsement attached to Mr. Wise's policy contained specific issuing language and the signature of an authorized representative of Westchester's local agency.

On appeal Westchester claims that the operative language of the policy clearly and unambiguously demonstrates that uninsured motorist protection was neither intended nor actually extended, and that the trial court erred in construing the policy to provide such coverage. The specific argument in support of this claim is that the language of item 3 explicitly states that the policy provides only such coverages as are indicated by the appearance of a premium charge in writing in the column opposite thereto. Since no premium charges or limits of liability appear in the columns opposite coverage J—Family Protection—and since no premium for this coverage was ever paid by Mr. Wise, Westchester asserts that there is no basis for the insured to conclude that he had uninsured motorist protection and that endorsement AL8845a must, therefore, be interpreted as nothing more than an amendment of coverage which did not apply in the first instance.

■ It is, of course, universally true that courts will not make contracts under the guise of judicial interpretation, but must enforce them in accordance with their clear and unambiguous language. See Molzahn v. State Farm Mutual Automobile Insurance Co., 308 F. Supp. 1144, 1146 (D.C.Kan.1968), aff'd, 422 F.2d 1321 (10th Cir. 1970); Clark v. Prudential Insurance Company of America, 204 Kan. 487, 464 P.2d 253, 256 (1970). We cannot, however, agree with Westchester's contention that this policy is clear and unambiguous with regard to uninsured motorist coverage.

■ Another axiom of the law is that an insurance contract, like all other contracts, should be construed so as to give effect to all of its various provisions, including stamped or typewritten portions and endorsements, both of which may prevail over irreconcilable detailed printed provisions in the policy. See Lindesmith v. Republic Mutual Fire Insurance Co., 189 Kan. 201, 368 P.2d 35, 38 (1962); Harrison v. Farmers & Bankers Life Insurance Co., 163 Kan. 277, 181 P.2d 520, 523 (1947). A fair construction of this insurance policy must, therefore, consider the red letter language stamped across item 3, stating that the policy " . . . is subject to all the conditions and clauses which are now or may hereafter be attached to the original policy," in conjunction with language contained in the endorsement which was in fact attached to the policy.

■ Westchester points out that the only language in the endorsement which might have caused the Wises to think that they had uninsured motorist coverage appears in the bold lettered caption and argues that resort may be had to a caption only to explain an ambiguity in the operative language of a policy, not to create an ambiguity which does not otherwise exist. See Provident Life & Accident Insurance Co. v. Anderson, 166 F.2d 492, 495 (4th Cir. 1948), cert. denied, 334 U.S. 846, 68 S.Ct. 1514, 92 L.Ed. 1769. It is true that captions are not insuring provisions and are not required to be drawn so as to touch on every element of the policy (see Clark v. Prudential Insurance Co. of America, *supra* 464 P.2d at 258); " . . . however, it must also follow that the captions should not be repugnant or misleading as to the requirements or coverage in the policy." Mosby v. Mutual

Life Insurance Co. of N. Y., 405 Ill. 599, 92 N.E.2d 103, 107 (1950). See also Sterneck v. Equitable Life Insurance Co. of Iowa, 237 F.2d 626, 629 (8th Cir. 1956); Mohan v. Union Fidelity Life Insurance Co., 207 Pa.Super. 205, 216 A.2d 342, 346 (1966); Craig v. Central National Life Insurance Co., 16 Ill.App. 2d 344, 148 N.E.2d 31, 36 (1958); 13 Appleman, Insurance Law and Practice, § 7387, p. 42 (1943). It should be emphasized, moreover, that the language of this caption as well as all other policy provisions, although a product of the insurer's professional mind and hand, should be interpreted as meaning what a reasonable person in the position of the insured would understand it to mean. See Transamerica Insurance Co. v. Gage Plumbing and Heating Co., 433 F.2d 1051, 1054 (10th Cir. 1970); · Gowing v. Great Plains Mutual Insurance Co., 207 Kan. 78, 483 P.2d 1072, 1076 (1971).

Applying these general rules of construction, we think it evident that Mr. and Mrs. Wise would have been befuddled had they attempted to ascertain from a reading of their policy whether they did or did not have the uninsured motorist coverage which they had requested. A reasonable man after: (1) deducing from the red letter statement that his policy is subject to all attached conditions and clauses; (2) noticing that an endorsement bearing explicit issuing language and the signature of an agent of the insurer is attached to his policy; and then, (3) reading the bold lettered caption on endorsement AL8845a, might very well be totally confused as to the entire matter, despite the absence of a specific premium charge opposite coverage J in item 3. Such a policy cannot be said to be free from ambiguity. "Policies written and sold to the public should not require the services of an expert in semantics to determine coverage." Casey v. Aetna Casualty & Surety Co., 205 Kan. 495, 470 P.2d 821, 827 (1970). See also Utah Home Fire Insurance Co. v. McCarty, 266 Cal.App.2d 892, 72 Cal.Rptr. 460, 462 (1968).

Inasmuch as an insurer prepares its own policies, it has a duty to make the meaning of those policies clear; thus, if the terms of a policy are ambiguous, uncertain, conflicting or susceptible of more than one construction, the construction most favorable to the insured must prevail. Transamerica Insurance Co. v. Gage Plumbing and Heating Co., *supra*; Gowing v. Great Plains Mutual Insurance Co., *supra;* Goforth v. Franklin Life Insurance Co., 202 Kan. 413, 449 P.2d 477, 481 (1969). Extrinsic evidence was properly admitted by the trial court in an attempt to clarify the intentions of the parties with regard to this policy. See Simonich v. Wilt, 197 Kan. 417, 417 P.2d 139, 145 (1966). The uncontroverted testimony indicated, and the trial court found, that Mr. Wise specifically requested and expected to receive protection against uninsured motorists. In these circumstances, the trial court correctly construed this policy in favor of the Wises and in so construing it correctly concluded that it provided them with uninsured motorist coverage. The judgment is affirmed.